Nos. 64,244
and
64,460

In the Matter of the Appeal of The Little Balkans Foundation, Inc., From Orders of The Kansas Racing Commission Dated September 16, 1988, as Extended and Modified by Orders Dated May 12, 1989, June 30, 1989, and October 13, 1989; Administrative Order No. 1; and Administrative Order No. 4.

The Little Balkans Foundation, Inc., a nonprofit Kansas corporation, *Appellant*, v. The Kansas Racing Commission and The Racing Association of Kansas Southeast, Inc., a nonprofit Kansas corporation, *Appellees*.

(795 P.2d 368)

Opinion filed July 13, 1990.

*Shelby P. Horn*, of Pittsburg, argued the cause and was on the briefs for appellant.

*Janet A. Chubb*, assistant attorney general, argued the cause and was on the brief for appellee Kansas Racing Commission.

The opinion of the court was delivered by

HOLMES, J.: This is a direct appeal by The Little Balkans Foundation, Inc., (Little Balkans) from various orders of the Kansas Racing Commission (KRC or Commission) regarding a proposed race track facility in Crawford County. The Racing Association of Kansas Southeast, Inc. (TRAK Southeast) was also joined as a respondent; however, it has filed no pleadings or briefs and apparently is content to ride upon the coattails of the KRC. The appellant has filed two separate appeals which have been consolidated in this court. Case No. 64,244 and case No. 64,460 are identical except that the latter case includes an order of the KRC which was issued after the filing of the earlier appeal. We dismiss for lack of jurisdiction.

On September 16, 1988, the KRC issued its order, designated 88 KRC 18, granting TRAK Southeast an organization license pursuant to the Kansas Parimutuel Racing Act, K.S.A. 1989 Supp. 74-8801 *et seq.* (the Act). The order also granted Sunflower Racing, Inc., (Sunflower) a facility owner license and a facility manager license. Little Balkans was an unsuccessful applicant for the organization license granted to TRAK Southeast.

The various types of licenses subject to the jurisdiction of the KRC are defined in K.S.A. 1989 Supp. 74-8802, which provides in part:

"As used in this act unless the context otherwise requires:

. . . .

"(f) 'Facility manager licensee' means a person, partnership, corporation or association licensed by the commission and having a contract with an organization licensee to manage a racetrack facility.

"(g) 'Facility owner licensee' means a person, partnership, corporation or association, or the state of Kansas or any political subdivision thereof, licensed by the commission to construct or own a racetrack facility but does not mean an organization licensee which owns the racetrack facility in which it conducts horse or greyhound racing.

. . . .

"(n) 'Organization licensee' means a nonprofit organization licensed by the commission to conduct races pursuant to this act and, if the license so provides, to construct or own a racetrack facility."

The organization license issued to TRAK Southeast is the one directly in issue here.

Order 88 KRC 18 provided that the term of the licenses was for a period of 25 years subject to annual and periodic review

and each license was subject to a number of conditions to be complied with by the licensees. Because of the various conditions attached to each license, the KRC adopted the term "conditional organization license" in its original order of September 16, 1988, and in subsequent orders and proceedings. More will be said about the terminology applied to the licenses by the KRC later in this opinion.

On the same date, the KRC issued its administrative order No. 4 denying licenses to all other applicants, including the organization license sought by Little Balkans. TRAK Southeast and Sunflower, the successful applicants, had submitted applications in which Sunflower was to provide the actual funds for construction of the Crawford County racing facilities. The September 16, 1988, order granted Sunflower 150 days to submit to the KRC final loan documents necessary to assure construction of the facilities.

Thereafter, Sunflower experienced difficulty in securing the necessary financing and was granted numerous extensions of time by the KRC. The rather turbulent history of the attempt to establish dog racing in Crawford County is set forth at length in *State, ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 792 P.2d 971 (1990), and need not be repeated here. Suffice it to say, Little Balkans is appealing from the September 16, 1988, order granting an organization license to TRAK Southeast; administrative order No. 4, of the same date, which denied the application of Little Balkans; orders issued May 12, 1989, and June 30, 1989, which granted Sunflower additional time to secure approved financing; and an order of October 13, 1989, which, in effect, cancelled the Sunflower licenses and clarified an order dated October 6, 1989. Apparently the KRC granted TRAK Southeast additional time to present a plan for a new facility owner/facility manager. Little Balkans stipulated in its reply brief that any issues relative to Sunflower are now moot since the Sunflower licenses have been cancelled.

One other order, administrative order No. 1 issued January 8, 1988, is also included by Little Balkans in this appeal. Administrative order No. 1 authorized the delegation of the day-to-day "management over the conduct of the races and the operation of the parimutuel system of wagering" from the organization licensee

to the facility manager licensee. The order is not limited to Crawford County but is a general order applicable to all KRC licensees.

Little Balkans raises numerous issues in its attack upon the various KRC orders but, at the outset, we are faced with a jurisdictional challenge by the KRC. Before turning to the applicable jurisdictional statutes, it is necessary to first determine the nature of the licenses authorized by 88 KRC 18. Little Balkans contends that there are numerous conditions precedent which must be met before any license is issued and argues that the order granted TRAK Southeast nothing more than a conditional license and, therefore, 88 KRC 18 is not a final order. It contends that each order which granted TRAK Southeast and Sunflower additional time, or in any way modified the conditions of 88 KRC 18, is a new order subject to direct appeal under the Act. The KRC, on the other hand, contends 88 KRC 18 actually granted TRAK Southeast a license subject to certain specified conditions which, if not met, could result in a cancellation of the license as was done with the Sunflower owner and facility manager licenses. Thus, it contends, under the Act the appeal here is not timely as to certain orders and, as to others, is not the proper subject of a direct appeal to the Supreme Court.

Much of the confusion which has been injected into this appeal and other actions involving the KRC has resulted from terminology adopted by the KRC in which it repeatedly refers to the TRAK Southeast organization license, and other licenses authorized by the KRC, as "conditional licenses." Little Balkans now uses this language to bolster its argument that TRAK Southeast has not received an organization license but merely has the right to receive a license at some time in the future when all conditions in the order are met.

To determine the nature of the organization license contemplated by 88 KRC 18, it is necessary to consider and construe the statutory provisions of the entire Act. The general principles applicable to statutory construction were recently summarized in *Bell v. Simon*, 246 Kan. 473, 790 P.2d 925 (1990), wherein the court stated:

" 'The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be deter-

mined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' *Harris Enterprises, Inc. v. Moore*, 241 Kan. 59, Syl. ¶ 1, 734 P.2d 1083 (1987).

" 'In determining legislative intent, courts are not bound to an examination of the language alone but may properly look into the causes which impel the statute's adoption, the objective sought to be attained, the statute's historical background and the effect the statute may have under the various constructions suggested.' *In re Petition of City of Moran*, 238 Kan. 513, Syl. ¶ 2, 713 P.2d 451 (1986).

" 'When a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be.' *Randall v. Seemann*, 228 Kan. 395, Syl. ¶ 1, 613 P.2d 1376 (1980).

" 'Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature.' *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984)." 246 Kan. at 476.

K.S.A. 1989 Supp. 74-8813 covers in depth the procedure and duties of the KRC in the issuance of an organization license. Subsection (a) of the statute sets forth the information to be included in an application for the license and the application fee to be paid at the time of filing. Subsection (e) provides in part:

"Within 30 days after the date specified for filing, the commission shall examine each application for an organization license for compliance with the provisions of this act and rules and regulations of the commission. If any application does not comply with the provisions of this act or rules and regulations of the commission, the application may be rejected or the commission may direct the applicant to comply with the provisions of this act or rules and regulations of the commission within a reasonable time, as determined by the commission. Upon proof by the applicant of compliance, the commission may reconsider the application. If an application is found to be in compliance and the commission finds that the issuance of the license would be within the best interests of horse and greyhound racing within this state from the standpoint of both the public interest and the horse or greyhound industry, as determined solely within the discretion of the commission, *the commission may issue an organization license to the applicant.*" (Emphasis added.)

Other sections of the statute indicate the legislature expected conditions to exist; yet, the Act refers to the license as an organization license not a conditional organization license. For instance, K.S.A. 1989 Supp. 74-8813(i) provides in part:

"All organization licenses shall be reviewed annually by the commission *to determine if the licensee is* complying with the provisions of this act and rules and regulations of the commission and *following such proposed plans* and operating procedures *as were approved* by the commission." (Emphasis added.)

K.S.A. 1989 Supp. 74-8813(j) is also persuasive, providing in part:

"Subject to the provisions of subsection (k), *the commission*, in accordance with the Kansas administrative procedure act, *may suspend or revoke an organization license* or may impose a civil fine not exceeding $5,000, or may both suspend such license and impose such fine, for each of the following violations by a licensee:

"(1) One or more violations, or a pattern of repeated violations, of the provisions of this act or rules and regulations of the commission;

"(2) *failure to follow one or more provisions of the licensee's plans for the financing, construction or operation of a racetrack facility as submitted to and approved by the commission;*

"(3) failure to maintain compliance with the requirements of subsection (c) or (d), if applicable, for the initial issuance of an organization license." (Emphasis added.)

Various provisions of the Act have been before this court on two previous occasions. See *State, ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, and *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 770 P.2d 423 (1989). The opinions in both cases offer some guidance as to the nature of a KRC order purporting to grant a license subject to the fulfillment of certain conditions.

In *Kansas Racing Management, Inc.*, the appellants appealed from an order of the KRC which granted "conditional licenses" to two of the appellees. The appellants were unsuccessful applicants for parimutuel racing licenses for the Wyandotte County area. At a regular meeting on July 9, 1988, the KRC voted to grant organization and facility/manager licenses to two of the appellees. The organization license was granted to The Racing Association of Kansas East, Inc., (TRAK East) and the owner and manager licenses were granted to Sunflower Racing, Inc., the same entity which was granted the owner and manager licenses in this case. The order, similar to 88 KRC 18, referred to the granting of conditional licenses and was filed on July 22, 1988. In referring to the order, the court stated:

"Then, pursuant to K.S.A. 1988 Supp. 74-8815(j), *the Commission granted licenses to Sunflower and TRAK East,* conditioned upon the filing of final loan documents, closing of the loan, the posting of a surety bond, and the submission to the Commission of copies of all contracts executed by the applicants." 244 Kan. at 349. (Emphasis added.)

In further discussion of one of the arguments, the court stated:

"The Commission failed to note that K.S.A. 1988 Supp. 74-8813(v) provides that the decision on licensure 'shall be final upon *the grant* of a license to one of two or more competing applicants.' Therefore, the Commission's decision was not final on July 9 when the Commission voted to grant the licenses to Sunflower and TRAK East. The decision became final on July 22, 1988, when the Commission filed its order. Therefore, the Commission did have jurisdiction to consider the issues raised by appellants' letter. During oral argument to this court, the Commission conceded, even under its interpretation of the Act, that it retained jurisdiction to determine the issues until it granted the final licenses on July 22, 1988." 244 Kan. at 359.

Thus, the court treated the license as final when the order was issued, even though it was subject to the conditions set forth in the order.

In *State, ex rel. Stephan v. Kansas Racing Comm'n,* the court was called upon to determine whether the KRC could refund the $250,000 deposit of Sunflower after it cancelled Sunflower's owner and manager licenses for the Crawford County track. In that case, the KRC and Sunflower were on the same side in that the KRC had ordered a refund of the Sunflower deposit. The State of Kansas filed an original action in mandamus seeking to prevent the refund. In discussing the nature of the license authorized by 88 KRC 18, the same order now before the court, we stated:

"In support of their position, Sunflower and the Commission argue that the license granted to Sunflower contained several conditions precedent that had to be performed before actual construction of the racetrack was to begin. The parties argue that the phrase 'in accordance with the terms of the license' requires that the license issued to Sunflower be incorporated into the seventh sentence of subsection (d) of 74-8815. They argue that, because the license was conditional and the conditions were not met, the licensee, Sunflower, did not fail under the terms of the license and, therefore, the deposit cannot be forfeited. We fail to see the merits in this argument. All regulatory licenses issued by the State are conditional because the licensee must meet certain standards and obligations. Various sanctions are imposed for a failure to meet those obligations and standards. Here, the consequences for failing to meet the conditions imposed by the Commission are not at issue. At issue is the consequence for failing to construct the racetrack *after*

*the license was issued.* That consequence is the forfeiture of the $250,000 deposit.

"Sunflower argues that it complied with all the requirements of the condition by presenting its financial loan documents prior to July 31. The Commission agrees that Sunflower met its requirements, but the Commission refused the loan proposal. Because the Commission did not accept this loan proposal, the conditions of the license were never met, and Sunflower never became obligated to begin construction of the racetrack. In other words, under the conditional license, Sunflower was never obligated to begin construction until the conditions precedent were fulfilled, including approval of the financing proposal.

"Although the Commission was unable to cite any Kansas cases dealing with the refund of a licensing fee in a case such as this, the Commission argues that the law concerning conditions precedent in contracts is analogous and applicable to conditional licenses, and should apply to the case at hand. We do not agree. We are not dealing with a contract but with a license created by statute." 246 Kan. at 723. (Emphasis added.)

The court concluded that Sunflower was not entitled to recover its deposit and stated:

"We conclude that the provisions of K.S.A. 1989 Supp. 74-8815(d) are clear and unambiguous. The statute mandates that the $250,000 deposit shall be forfeited if the licensee fails to complete the racetrack facility. *The legislature chose not to differentiate between a conditional and an unconditional license,* nor did it make any exception to the forfeiting of the deposit in the event the racetrack facility was not completed.

"We concur with the attorney general that the respondent Commission had no authority or discretion to return the deposit. *Sunflower Racing, Inc., was granted the license* and, because it failed to complete the racetrack facility, the deposit was forfeited pursuant to K.S.A. 1989 Supp. 74-8815(d)." 246 Kan. at 726-27. (Emphasis added.)

Nowhere in the Kansas Parimutuel Racing Act have we found any provision for a "conditional license." The Act repeatedly refers to "license" or "licenses" even though it does provide that each type of license shall be subject to various conditions which must be met by the licensee. Failure to meet any applicable conditions or failure to continue to comply with conditions already met may be grounds for revocation and cancellation of any license.

We conclude that the order granting TRAK Southeast an organization license was final for purposes of appeal and that, while the license was subject to certain conditions yet to be fulfilled by the licensee, the license was more in the nature of a license subject to conditions rather than a conditional license. The use

of the term "conditional license" by the KRC clearly was not intended to mean that all of the conditions must be finally fulfilled before the applicant was licensed. Such an interpretation would make the financing and construction of a racing facility costing millions of dollars virtually impossible. 88 KRC 18 constituted a grant of an original organization license as contemplated by K.S.A. 1989 Supp. 74-8813.

We now turn to the jurisdictional provisions of the Act. At the outset we pause to note the oft-stated rule of appellate jurisdiction that the right to appeal is entirely statutory and not a right vested in the United States or Kansas Constitutions; Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken within the time limitations and in the manner prescribed by the applicable statutes. *State v. Neer,* 247 Kan. 137, Syl. ¶ 1, 795 P.2d 362 (1990); *State v. Tripp,* 237 Kan. 244, 246, 699 P.2d 33 (1985).

K.S.A. 1989 Supp. 74-8813(v) vests this court with original jurisdiction over the grant or denial of an original organization license, providing:

"The grant or denial of an original organization license shall not be subject to the Kansas administrative procedure act. Such grant or denial shall be a matter to be determined in the sole discretion of the commission, whose decision shall be final upon the grant of a license to one of two or more competing applicants without the necessity of a hearing on the denial of a license to each other competing applicant. Any action for judicial review of such decision shall be by appeal to the supreme court in accordance with the act for judicial review and civil enforcement of agency actions, except that the scope of review shall be limited to whether the action of the commission was arbitrary or capricious or constituted an abuse of discretion. All competing applicants for the organization license shall be parties to such appeal. Any such appeal shall have priority over other cases except those having statutory priority."

An identical provision exists with respect to the grant or denial of an original facility owner license and an original facility manager license. See K.S.A. 1989 Supp. 74-8815(m).

K.S.A. 1989 Supp. 74-8813(u) states:

"The refusal to renew an organization license shall be in accordance with the Kansas administrative procedure act and shall be subject to review under the act for judicial review and civil enforcement of agency actions."

K.S.A. 1989 Supp. 74-8815(l) is identical with respect to the refusal to renew an owner's or manager's license. There are no other specific provisions in the Act which directly pertain to appeals.

Thus, all other KRC orders are subject to the broad grant of the right to appeal found in the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*

K.S.A. 77-603(a) provides:

"This act applies to all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act."

Under K.S.A. 77-607, a person is entitled to judicial review of final agency action if the person has standing, has exhausted administrative remedies, and has timely filed a petition for judicial review.

K.S.A. 77-613 specifies:

"Subject to other requirements of this act or of another statute:

. . . .

"(b) A petition for judicial review of an order is not timely unless filed within 30 days after service of the order, but the time is extended during the pendency of the petitioner's timely attempts to exhaust administrative remedies."

K.S.A. 77-609 establishes jurisdiction and venue of all appeals in the district court unless otherwise provided by law. Under the Kansas Parimutuel Racing Act, the only orders which are directly appealable to the Supreme Court are orders granting or denying an original organization license (K.S.A. 1989 Supp. 74-8813[v]) and orders granting or denying an original facility owner license or an original facility manager license (K.S.A. 1989 Supp. 74-8815[m]). Pursuant to K.S.A. 77-613(b), a petition for judicial review of such orders must be filed within 30 days after service of the order.

Order 88 KRC 18, which granted TRAK Southeast an organization license, and administrative order No. 4, denying Little Balkans the license, were served on or about September 20, 1988. The two appeals consolidated here were filed with the Supreme Court on September 19, 1989, in case No. 64,244 and on November 13, 1989, in case No. 64,460. The petitions, insofar as

they pertain to 88 KRC 18 and administrative order No. 4, were obviously not timely filed and this court has no jurisdiction of the appeals from these orders.

Administrative order No. 1, and the orders of May 12, 1989, June 30, 1989, and October 13, 1989, are not orders which could be appealed directly to this court. Assuming Little Balkans had standing to appeal those orders, they were only appealable to the district court, and this court lacks jurisdiction as to this portion of the appeals.

The appeals herein are dismissed for lack of jurisdiction.