(892 P.2d 518)

No. 73,305

HISTORIC PRESERVATION ALLIANCE, INC., *Appellant*, v.
CITY OF WICHITA, *Appellee*.

Opinion filed March 24, 1995.

*J. Greg Kite*, of Wichita, and *Ronald Schneider*, of Lawrence, for the appellant.

*Douglas J. Moshier*, deputy assistant city attorney, and *Gary E. Rebenstorf*, director of law, for the appellee.

Before BRISCOE, C.J., RULON and GERNON, JJ.

BRISCOE, C.J.: Historic Preservation Alliance, Inc., (HPA) appeals from the district court's dismissal of its appeal from a de-

cision by the Wichita City Council (Council) as untimely filed. At issue is whether the Council's decision was final and appealable on November 8 or on November 15, 1994. After concluding HPA's appeal to the district court was timely because the Council's decision was not final and appealable until November 15, we reverse and remand for the district court's determination of HPA's appeal on its merits.

The Allis Hotel (Hotel), located in Wichita, Kansas, was built in 1929 and remained in operation until 1968. After its closing, the Hotel stood vacant for over 20 years.

In 1992, the Hotel was listed in the Register of Historic Kansas Places maintained by the Kansas State Historical Society. Under K.S.A. 1994 Supp. 75-2724(a), the State Historic Preservation Officer (SHPO) has the statutory authority to review and comment on the impact a project may have on any listed building and its environs. Prior to issuance of a demolition permit, the SHPO must be given five days' notice by certified mail of a determination that there is no feasible and prudent alternative to demolition. In addition, K.S.A. 1994 Supp. 75-2724(b) provides that "[a]ny person aggrieved by the determination of a governing body pursuant to this section may seek review of such determination in accordance with K.S.A. 60-2101 and amendments thereto."

On March 1, 1994, the City of Wichita (City) acquired the Hotel from its owners pursuant to a settlement of various lawsuits and the City's payment of $375,000 to the owners. In late March, the City mailed "requests for proposals" to 58 firms across the nation hoping to attract a firm that would be interested in rehabilitating the Hotel. Only two firms responded and forwarded proposals. After the proposals were reviewed by a committee of city staff and individuals from the private sector experienced in construction and proposal analysis, the City rejected both proposals. In June 1994, the City contacted 10 developers to encourage their submission of redevelopment proposals. Only one developer responded, declining the offer.

On August 31, 1994, the City sent notice to the SHPO that it intended to demolish the Hotel. In response, the SHPO notified the City on October 21, 1994, that the City's plan would destroy

the Hotel, a historic property included in the Register of Historic Kansas Places.

During the week of October 31, 1994, the City placed on the agenda of the November 8 Council meeting the question of whether there was a feasible and prudent alternative to the demolition of the Hotel. During that same week, the Council staff prepared an agenda report for the Mayor and the Council, setting forth the history of the Hotel and the City's actions regarding the Hotel since the City obtained title in March 1994.

At its November 8 meeting the Council received additional information as to whether a feasible and prudent alternative to demolition of the Hotel existed. All persons who asked to speak to the issue were given an opportunity to do so, including representatives of HPA and Kansas Preservation Alliance. Only one proposal was submitted as an alternative to demolition. The Council recessed while the financial particulars of that proposal were evaluated by staff of the City. When the Council returned to the matter later in the day, staff reported that the proposal was not economically feasible, even with the assumption that historic preservation tax credits could be used to supply some portion of the developer's equity required for the renovated hotel project. After further discussion, the Council adopted a motion "that the Council find that a feasible and prudent alternative to demolition does not exist and that staff prepare written findings and provide the State Historical Preservation Office with a statutory notice of its findings."

At the next regularly scheduled Council meeting on November 15, 1994, an item was placed on the agenda which listed 22 findings of fact relating to the proposed demolition of the Hotel. Included in those findings was a determination that no feasible and prudent alternative to the demolition existed. The Council adopted the findings by unanimous vote without further discussion. No additional testimony or information was presented to the Council at the November 15 meeting.

On November 15, 1994, the City sent notice to the SHPO that it had determined no feasible and prudent alternative to demolition existed. Along with the notice, the City sent a copy of the

findings it adopted on November 15. The City stated in its notice that it would not proceed with the proposed demolition for a period of five days from the date of receipt of the notice. On December 15, 1994, HPA served notice on the City of its intent to appeal the Council's finding that no feasible and prudent alternative to demolition existed. HPA filed a petition and notice of appeal with the district court on December 15, 1994, challenging the City's action. HPA also filed a motion for temporary injunction on that same day. The district court issued a temporary restraining order, restraining the City from damaging, destroying, or demolishing the Hotel until a hearing was held on the motion for temporary injunction.

On December 21, 1994, the district court heard the motion for temporary injunction and determined the notice of appeal filed by HPA on December 15 was not timely. The court denied the motion for temporary injunction, dissolved the temporary restraining order, and dismissed the appeal as untimely filed. HPA then filed a timely notice of appeal to this court.

After docketing the appeal, HPA filed a motion for immediate stay and/or injunction with this court. On January 12, 1995, this court entered an interim stay order pending the filing of a response by the City. After the City filed a response, HPA's motion was heard on January 26, 1995. HPA's motion for temporary injunction was granted on February 6, 1995, prohibiting further demolition of the Hotel during the pendency of this appeal. The City was allowed to remove all friable asbestos-containing material from exposed surfaces pending resolution of this appeal.

Was HPA's notice of appeal timely filed with the district court?

K.S.A. 60-2101(d) applies to a "judgment rendered or final order made by a political or taxing subdivision, or any agency thereof." K.S.A. 60-254(a) defines a judgment as "the final determination of the rights of the parties in an action." Under 60-2101(d), when no other means for perfecting an appeal is provided by law, a notice of appeal to the district court must be filed "from such judgment or order with such subdivision or agency within 30 days of its entry." The time for appeal therefore could

begin to run only upon entry of the final order or judgment of the Council.

Even if the Council's decision of November 8 was entered when it was announced at the November 8 meeting and made a part of the Council's minutes, the time for appeal would not begin to run from that date unless the decision was the Council's final order or judgment. See *Thompson v. Amis*, 208 Kan. 658, 659, 663, 493 P.2d 1259, *cert. denied* 409 U.S. 847 (1972).

The November 8 decision was not the Council's final determination or final order. A final order or judgment has been defined as "one which finally decides and disposes of the merits of the proceeding, and reserves no further question, or direction, for the future or further action" of the tribunal. *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 15, 687 P.2d 603 (1984).

Although on November 8 the Council found that a feasible and prudent alternative to demolition did not exist, it directed further action and did not finally decide and dispose of the merits of the proceeding. The Council directed City staff to prepare written findings on the issue and to provide the SHPO with statutory notice of its findings. The fact that the Council formally adopted the staff findings at its November 15 meeting indicates the Council did not consider its November 8 decision to be final. See *Cortez v. Owyhee County*, 117 Idaho 1034, 1037, 793 P.2d 707 (1990) (logical to conclude the county commissioners would not have issued written findings and conclusions if they had considered an earlier action to be a final decision). As HPA argues, Council members could have changed their minds after preparation of the written findings and could have voted against adoption of the findings at the November 15 meeting. Otherwise, there would have been no reason for the Council to adopt the written findings. The matter was still at least technically under consideration when the Council considered the proposed findings on November 15.

A decision cannot be final when the matter is still under consideration. In *Bruns v. Kansas State Bd. of Technical Professions*, 19 Kan. App. 2d 83, 864 P.2d 1212 (1993), *aff'd* 255 Kan. 728, 877 P.2d 391 (1994), the plaintiff appealed the denial of an en-

gineering license after the defendant administrative board had issued four separate letters advising the plaintiff of its decision; the appeal was filed more than 30 days after the first three letters but within 30 days after the fourth letter. The court held the appeal was timely because the first three letters were not final orders.

"The fact is, up until the fourth order was issued, the matter was still under active consideration by the [Board of Technical Professions]. To require a petition for review to be filed while a matter is still pending and being litigated would create mass confusion and be lacking in logic. It would also run afoul of the rule of law that requires one to exhaust administrative remedies before resorting to the courts . . . ." 19 Kan. App. 2d at 85.

Moreover, until the Council adopted the written findings, the basis for its decision was not clear. It would be difficult for an aggrieved party to make a reasoned decision on whether to appeal an order before the basis for the order is made known.

As the City points out, specific written findings may not have been required. See *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, Syl. ¶ 9, 539 P.2d 1 (1975). The Council could have entered judgment immediately on November 8. By directing its staff to prepare written findings for later adoption, the Council delayed entry of final judgment.

At the very least, the Council made it appear that its decision of November 8 was not a final order. Aggrieved parties could reasonably conclude the November 8 decision was not final. See *LeCounte v. City of Wichita*, 225 Kan. 48, 53-54, 587 P.2d 310 (1978). The time for appeal should not run when the decision-making body "has created the impression that the determination, albeit issued, was intended to be nonconclusive." *Edmead v. McGuire*, 67 N.Y.2d 714, 716, 499 N.Y.S.2d 934, 490 N.E.2d 853 (1986). See *Swafford v. Norwood Bd. of Edn.*, 14 Ohio App. 3d 346, 471 N.E.2d 509 (1984). Implicit in the rule that only final decisions are appealable is the requirement that the parties know that the decision is final. See *Crofton v. Anne Arundel County*, 99 Md. App. 3d 233, 243, 636 A.2d 487, *cert. denied* 335 Md. 81 (1994).

The City's sending notice to the SHPO on November 15, 1994, is further support for the conclusion that the Council's decision

was not final until November 15. If the Council's action was final on November 8, the Council would have no reason to adopt written findings on November 15 and delay the mailing of notice to the SHPO until that date.

Reversed and remanded to the district court for determination of HPA's appeal on its merits.