No. 81,046

AMERICAN TRUST ADMINISTRATORS, INC., *Appellant,* v. KATHLEEN SEBELIUS, as the Commissioner of Insurance for the State of Kansas, *Appellee.*

(981 P.2d 248)

Opinion filed June 4, 1999.

*Justin T. Liby,* of Liby & McVay, L.L.C., of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*Rebecca A. Sanders,* of the Kansas Insurance Department, argued the cause, and *Margaret A. Gatewood,* of the same agency, was with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: American Trust Administrators, Inc., (ATA) appeals a decision of the district court denying its petition to hold Kathleen Sebelius as the Commissioner of Insurance (Commissioner) for the State of Kansas in contempt for failure to abide by a court order regarding the approval of a stop-loss policy issued by ATA on behalf of Protective Life Insurance Company. ATA argues that the court erred in determining that the Commissioner has the authority to regulate stop-loss insurance and that the court erred in determining that the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (1994), did not preempt such regulation.

ATA is a Kansas corporation licensed to act as a third-party administrator within Kansas. As such, it provides administrative services to small employers who choose to self-fund their employee benefit plans. Kathleen Sebelius, as Commissioner of Insurance, is responsible for the administration of the Kansas Insurance Code, codified at Chapter 40 of the Kansas Statutes Annotated, and all rules and regulations enacted thereunder.

The dispute between ATA and the Commissioner arose by reason of the Commissioner's adoption of Insurance Department Bulletins 1993-12 and 1993-12 (Addendum), regulating stop-loss insurance in Kansas. ATA, as a third-party administrator for Protective Life Insurance Company, markets stop-loss insurance in Kansas.

Stop-loss insurance is generally sold to an employer with a self-funded group benefit plan in order to provide protection against catastrophic losses. The stop-loss policy reimburses the employer when its losses exceed certain "attachment points." The specific attachment point is reached when the amount of claims incurred and paid on behalf of an individual participant during a plan year exceeds a certain amount. From that point forward, the policy reimburses the employer with regard to claims for that individual. The "aggregate attachment point" is reached when the amount of claims incurred on behalf of all participants during a plan year exceeds a certain amount. From that point forward, the policy reimburses the employer with regard to claims of all participants.

Because the insurance company does not pay benefits directly to the participants and is not involved in administering the benefit plan, stop-loss insurance has generally been held by courts not to be health insurance. See *Brown v. Granatelli*, 897 F.2d 1351, 1354 (5th Cir.), *cert. denied* 498 U.S. 848 (1990); *United Food & Commercial Workers v. Pacyga*, 801 F.2d 1157, 1161-62 (9th Cir. 1986); 1 Appleman, Insurance Law & Practice § 26 (1999 Supp.).

The United States Supreme Court has created a distinction with regard to ERISA between fully insured welfare benefit plans and self-insured welfare benefit plans. Those plans that purchase group health insurance are subject to state insurance regulations while those that self-fund their benefit plans are subject only to ERISA mandates. See *FMC Corp. v. Holliday*, 498 U.S. 52, 62-63, 112 L. Ed. 2d 356, 111 S. Ct. 403 (1990); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985).

The Kansas Insurance Department began receiving complaints from insurers that some third-party administrators were selling stop-loss coverage with specific attachment points under $10,000, thereby allowing employers to circumvent compliance with small group reform legislation such as K.S.A. 40-2209d - p. For example, rather than adopt a group health policy with a $5,000 deductible, an employer could declare itself self-funded and purchase stop-loss insurance with a $5,000 attachment point, thereby entirely avoiding state requirements regarding its benefit plan. See Lenhart, *ERISA Preemption: The Effect of Stop-Loss Insurance on Self-Insured Health Plans*, 14 Va. Tax Rev. 615, 638-39 (1995).

The Kansas Insurance Department conducted a study to address the problem of companies using stop-loss insurance to circumvent state regulations on benefit plans. After the study of the problem, the Kansas Insurance Department adopted Bulletin 1993-12 in 1993, which established certain criteria for the issuance of stop-loss policies to small employers. The Bulletin, which was sent to all insurance companies doing business or authorized to do business in Kansas, provides, among other requirements, that the stop-loss policies issued in Kansas not have specific attachment points less than $10,000 and that the aggregate attachment points be no

less than 120% of expected claims. The Bulletin provided that stop-loss policies not meeting those requirements would be considered group health policies and be subject to insurance laws and regulations. An addendum, Bulletin 1993-12 (Addendum), was later added to clarify some language used in the previous bulletin.

In 1995 ATA, as a third-party administrator, filed on behalf of Protective Life Insurance Company a stop-loss policy which failed to meet the requirements of the Bulletin 1993-12. ATA believed that there was no authority for the Commissioner to regulate stop-loss insurance in Kansas and further believed that such plans were exempt from state regulation under ERISA.

The Commissioner took no action on ATA's stop-loss policy for 30 days, which, in accord with K.S.A. 40-2215(d), amounted to an approval of the policy. However, the Insurance Department soon began proceedings under 40-2215(g) to withdraw its approval of the filing on the basis that the stop-loss policy of ATA did not conform to Bulletins 1993-12 and 1993-12 (Addendum). ATA appealed the disapproval of its 1995 stop-loss policy by the Commissioner. Upon exhaustion of administrative remedies, the disapproval was sustained by final order of the Kansas Insurance Department on July 18, 1996. ATA filed a petition for judicial review of agency action pursuant to the Act for Judicial Review and Civil Enforcement of Agency Action, K.S.A. 77-601 *et seq.*

On judicial review, ATA argued that (1) Bulletin 1993-12 was preempted by ERISA; (2) the Commissioner did not have statutory authority to regulate stop-loss insurance; and (3) Bulletin 1993-12 was arbitrary and capricious. After providing the parties a full opportunity to address these issues, the trial court, in a memorandum order dated April 25, 1997, granted ATA's petition for judicial review and overturned the decision of the Commissioner to disapprove the stop-loss policy submitted by ATA. In its memorandum order, the court held that Bulletin 1993-12 was not preempted by ERISA but also held that the Commissioner did not have statutory authority to regulate stop-loss insurance. Thus, the court did not need to address ATA's contention that the Bulletin was arbitrary and capricious. In reaching its conclusion that the Commissioner could not regulate stop-loss insurance, the court noted that while

K.S.A. 40-2215 gives the Commissioner power to regulate accident and sickness insurance, stop-loss insurance is not accident and sickness insurance. The court overturned the decision of the Commissioner disapproving ATA's 1995 stop-loss policy. No appeal was perfected from the April 25, 1997, memorandum order.

On July 1, 1997, the legislature added subsection (b) to K.S.A. 40-2201. L. 1997, ch. 190, § 24. Subsection (b) states: "The term 'policy of stop loss or excess loss insurance coverage' means a policy, contract, endorsement, attachments, amendments or other modifications that insure against losses of the policyholder issued by a stock, mutual company or association or any other insurer."

On July 9, 1997, the Commissioner, taking the position that the amendment provided authority for the regulation of stop-loss insurance, notified ATA that it must comply with the 1993-12 Bulletins in regard to its stop-loss policy or risk disapproval of the same. Based upon the amended version of K.S.A. 40-2201(b), the Kansas Insurance Department revoked its approval of ATA's policy. ATA timely requested an administrative hearing before the Kansas Insurance Department, which proceeding has been stayed pending this appeal. In its docketing statement before this court, and in response to the question contained in the docketing statement as to whether there are any proceedings in any other court or administrative agency, state or federal, which might affect this case or the court having jurisdiction, ATA responded, "yes," and identified the following administrative proceeding before the Kansas Insurance Department, In Re Protective Life Insurance Company and American Trust Administrators, Inc., Docket No. 2336-F.

On December 17, 1997, ATA filed a motion for an order to appear and show cause why the Commissioner should not be held in contempt for her refusal to abide by the court's April 25, 1997, ruling that she did not have the authority to regulate stop-loss insurance. On January 29, 1998, the district court found that although it had overturned the revocation order under the previous statute, the statute had later been amended. The court further found that the amendment was intended to authorize the Kansas

Insurance Department to regulate stop-loss policies. Accordingly, the court found that the Commissioner was not in contempt.

ATA filed a motion to amend, which the court denied on March 2, 1998. ATA then filed its notice of appeal, which reads:

"Notice is hereby given that American Trust Administrators, Inc., Petitioner, appeals to the Court of Appeals of the State of Kansas from the District Court's Memorandum Orders issued in this matter on April 25, 1997, January 29, 1998, and March 2, 1998."

The appeal was transferred to this court pursuant to K.S.A. 20-3018(c).

Jurisdiction

### April 25, 1997, Memorandum Order

Prior to the time the appeal was transferred to this court, an order to show cause was issued by the Kansas Court of Appeals as to why the appeal should not be dismissed for lack of jurisdiction. The parties responded, and in an order issued June 9, 1998, the Kansas Court of Appeals ruled:

"The question of whether this court has jurisdiction to review the district court's order in the case, filed on April 25, 1997, will be referred to the hearing panel for argument and decision. The parties are therefore ordered to address this question in their briefs in addition to the other issues raised on appeal."

The question has been briefed and argued and is ripe for decision.

The April 25, 1997, memorandum order resolved all issues pending for resolution by the trial court. The order stated that there were three questions before the court, (1) does ERISA preempt Bulletin 1993-12; (2) does the Commissioner have authority to regulate stop-loss insurance; and (3) if the Commissioner may regulate stop-loss insurance, is Bulletin 1993-12 arbitrary and capricious.

The April 25, 1997, memorandum order provided:

"Here there is no statutory support for the Commissioner's authority to regulate the attachment points of stop loss insurance policies. Consequently, the Court holds that the Commissioner does not have authority to issue Bulletin 1993-12. Because the Court so holds, it does not need to reach the issue of whether the limits within the Bulletin are arbitrary and capricious and declines to do so.

"In conclusion, the Court finds that regulation of stop loss insurance is not preempted by ERISA because it is protected by the 'savings clause' and does not

fall within the 'deemer clause.' Insurance regulations that only remotely [affect] the economics of an ERISA plan are not preempted. Finally, the Court finds that the Commissioner is without authority to issue Bulletin 1993-12 because there is no statutory authority for her to regulate stop loss insurance attachment points."

K.S.A. 60-2103(a) provides that when an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be 30 days from the entry of the judgment. The notice of appeal in this case, which asks this court to review the district court's April 25, 1997, memorandum order, was filed more than 10 months after the entry of the April 25, 1997, memorandum order.

The April 25, 1997, memorandum order was a final order, resolving all issues before the court. There were no issues left to be decided. See *Honeycutt v. City of Wichita,* 251 Kan. 451, 457, 836 P.2d 1128 (1992):

" '[A] "final decision" . . . is really self-defining. Obviously it is an order which definitely terminates a right or liability involved in the action, or which grants or refuses a remedy as a terminal act in the case.' "

See 6 Vernon's Kansas C. Proc. § 60-2102, Author's Comments § 2102.2 (1967); 2 Gard's Kansas C. Proc. 3d Annot. § 60-2102, Commentary (1997).

ATA contends that the April 25, 1997, memorandum order was not a final order within the meaning of K.S.A. 60-2103(a) and that K.S.A. 60-2102(a)(4) grants this court jurisdiction to consider the April 25, 1997, memorandum order of the district court. K.S.A. 60-2102(a)(4) provides that an appeal may be taken to the Court of Appeals from

"[a] final decision in any action, except in an action where a direct appeal to the supreme court is required by law. In any appeal or cross appeal from a final decision, *any act or ruling from the beginning of the proceedings shall be reviewable.*" (Emphasis added.)

According to ATA's argument, the final order in this case did not occur until its motion to amend was denied on March 2, 1998; thus, the notice of appeal filed by ATA on March 30, 1998, met the 30-day requirement of K.S.A. 60-2103(a).

ATA's argument fails to recognized the finality of the April 25, 1997, memorandum order. The district court's ruling on April 25, 1997, finally resolved all pending issues before the court by deciding that ERISA did not preempt and that the Commissioner had no statutory authority to regulate stop-loss insurance. The subsequent revocation of ATA's stop-loss policy based upon new legislation did not affect the finality of the district court's April 25, 1997, memorandum order.

ATA argues that the reasoning in *Historic Preservation Alliance, Inc. v. City of Wichita*, 20 Kan. App. 2d 721, 892 P.2d 518 (1995), supports its position. In *Historic Preservation Alliance*, the Court of Appeals was faced with the question of whether a decision by a city council was a final order. The decision found that a feasible alternative to demolition of a building did not exist and directed that findings to that effect be prepared. These findings were adopted at a later meeting. The Court of Appeals held that this was not a final order because it directed the preparation of findings at a later date. 20 Kan. App. 2d at 723-25. In so doing, the Court of Appeals noted that the council could have decided not to adopt the findings at the later meeting and stated: "A decision cannot be final when the matter is still under consideration." 20 Kan. App. 2d at 725.

*Historic Preservation Alliance* provides no support to ATA. There clearly was no matter still under consideration following the district court's April 25, 1997, memorandum order. The district court determined that ERISA did not preempt the Bulletin but that the Commissioner could not regulate stop-loss insurance. The decision was final. Later, when the Kansas Insurance Department again tried to revoke approval, the district court found in a proceeding to enforce its earlier ruling, that the statutory authority had been amended and now allowed regulation.

ATA chose not to appeal from the April 25, 1997, ruling that ERISA did not preempt state regulation of ATA's stop-loss insurance policy. We have no jurisdiction to consider the district court's ERISA ruling. Moreover, we have no jurisdiction to review the final decision that the Commissioner had no statutory authority on April 25, 1997, to regulate stop-loss insurance.

January 29, 1998, and March 2, 1998, Memorandum Orders

ATA filed its appeal on March 30, 1998, contending that the trial court erred in failing to hold the Commissioner in contempt for violating the court's April 25, 1997, memorandum order. On January 29, 1998, the trial court considered the legislative amendment to the provisions of K.S.A. 40-2201, which included a provision defining stop-loss insurance. The trial court determined that the new amendment allowed the Commissioner to regulate stop-loss and excess-coverage insurance policies and that the Commissioner was not in contempt. ATA moved to amend, and on March 2, 1998, its motion to amend was denied. ATA appealed.

The single issue raised by its appeal is whether the trial court erred by failing to find that the Commissioner was in contempt by her noncompliance with its previous April 25, 1997, memorandum order. Does this court have jurisdiction to consider this narrow question? We believe it does.

Contempt orders are governed by K.S.A. 20-1201 *et seq.*; K.S.A. 20-1205, which governs appeals, provides:

"The testimony taken on the trial of any accusation of contempt shall be preserved. An appeal may be taken from any judgment of conviction therefor in the same manner as is provided by law in civil cases. Upon the filing and service of a notice of appeal, execution of the judgment shall be stayed upon the giving of such bond as may be required by the court or a judge thereof, or by any justice or judge of an appellate court."

The above statute specifically provides for an appeal from a conviction for contempt but makes no provision for the appeal of a finding of not guilty of contempt. Nevertheless, we have held on two prior occasions that while a finding of not guilty of criminal contempt may not be appealed, a finding of not guilty in a civil contempt may be appealed. *Hendrix v. Consolidated Van Lines, Inc.*, 176 Kan. 101, 111, 269 P.2d 435 (1954); *Smith v. Clothier*, 113 Kan. 47, 54-55, 213 Pac. 1071 (1923). We have held that such a judgment of not guilty in a civil proceeding is an order affecting a substantial right and, therefore, a final order from which an appeal might be taken. *Smith v. Clothier*, 113 Kan. at 55. Thus, we have jurisdiction over the contempt issue.

Discussion and Analysis

ATA contends that in order to decide the question of contempt, the trial court necessarily had to consider the effect of the new amendment on its previous order entered April 25, 1997. The trial court decided that the effect of the new amendment was to grant the Commissioner authority to regulate stop-loss insurance, with the result that the Commissioner was not in violation of the court's previous order determining that the Commissioner had no authority to regulate stop-loss insurance. The real purpose of ATA in taking an appeal is to have this court determine whether the July 1, 1997, amendment to K.S.A. 40-2201 gives the Commissioner the ability to regulate stop-loss insurance. However, this same issue is the subject of ATA's ongoing administrative appeal regarding the disapproval of its stop-loss policy. ATA attempts through the appeal of the district court's contempt ruling to short-circuit the administrative process enacted to address the precise question it seeks this court to address. We need not address this question to resolve the trial court's conclusion that the Commissioner was not in contempt.

In this case of civil indirect contempt, the district court's judgment that the Commissioner was not in contempt was a matter within the sound discretion of the court. Such a judgment will not be disturbed on appellate review unless abuse of discretion clearly appears from the record. See *State v. Shannon*, 258 Kan. 425, 435, 905 P.2d 649 (1995); *Strecker v. Wilkinson*, 220 Kan. 292, 295, 552 P.2d 979 (1976). In *Haynes v. Haynes*, 168 Kan. 219, 226, 212 P.2d 312 (1949), this court, in affirming a decision that a party was not in contempt for failure to pay child support, said:

"It must be remembered that by the very nature of a contempt proceeding the decision of guilt or innocence of an accused rests in the sound discretion of the trial court before whom the matter is pending. . . . It must, likewise, be kept in mind that when a trial court has exercised that discretion and its decision has been challenged by appeal the sole duty of the appellate court is to determine whether the record reveals such an abuse of discretion as to warrant a reversal of its action. This is true even though the appellate court might have rendered a contrary decision under the evidence if it had been sitting in judgment."

Our scope of review is one of abuse of discretion. Without deciding the question of whether the July 1, 1997, amendment to

K.S.A. 40-2201 gives the Commissioner the ability to regulate stop-loss insurance, we note that the district court interpreted the amendment as granting such authority. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. *Simon v. Simon*, 260 Kan. 731, 735, 924 P.2d 1255 (1996). Because the discretionary decision in this case depended in large part on the court's interpretation of the effect of the July 1, 1997, amendment to subsection (b) to K.S.A. 40-2201, its discretion is somewhat reduced. "Discretion must be exercised, not in opposition to, but in accordance with, established principles of law. It is not an arbitrary power. In its practical application in this state, judicial discretion is substantially synonymous with judicial power." *Saucedo v. Winger*, 252 Kan. 718, 731-32, 850 P.2d 908 (1992).

In its January 29, 1998, and March 2, 1998, memorandum orders concerning contempt, the trial judge fully articulated his reasons for his discretionary decision not to hold the Commissioner in contempt based on his well-reasoned opinion that the new amendment granted power to the Commissioner to regulate stop-loss insurance. The decision was made in accord with established principles of statutory interpretation existing in this state. While there remains the question of whether such interpretation was correct, we cannot say that the trial court abused its discretion in failing to hold the Commissioner in contempt based on that interpretation.

The precise question as to whether the new amendment empowers the Commissioner to regulate stop-loss insurance in Kansas is the subject of an administrative proceeding enacted for the express purpose of providing a remedy to an aggrieved party. It would be inadvisable for this court to interrupt the administrative process by attempting in this early stage to determine whether the July 1, 1997, amendment to subsection (b) of K.S.A. 40-2201 (L. 1997, ch. 190, § 24) grants the Commissioner authority to regulate stop-loss insurance in Kansas. We need not resolve this question to affirm the trial court's finding of no contempt, and to do so would be inconsistent with the well-established doctrine of exhaustion of administrative remedies:

"The doctrine of exhaustion of administrative remedies is directed toward promoting proper relationships between the courts and administrative agencies charged with particular administrative and regulatory duties. It promotes orderly procedure and requires a party to exhaust the administrative sifting process with respect to matters peculiarly within the competence of the agency." *Jenkins v. Newman Memorial County Hospital,* 212 Kan. 92, 95, 510 P.2d 132 (1973).

We hold that the trial court did not abuse its discretion in its conclusion that the Commissioner was not in contempt of its April 25, 1997, memorandum order.

Appeal dismissed in part for lack of jurisdiction and affirmed in part.

ALLEGRUCCI, J., not participating.

JAMES W. PADDOCK, Senior Judge, assigned.

LARSON, J., concurring in part and dissenting in part:

I concur in the majority's decision that the April 25, 1997, order resolved all pending issues in this case and was a final order within the clear meaning of K.S.A. 60-2103(a). Once the judgment was entered, a 30-day period existed within which to appeal. When an appeal was not filed within that 30-day period, the judgment became final.

While American Trust Administrators, Inc. (ATA), may not have agreed with that portion of the trial court's April 25, 1997, ruling that ERISA did not preempt state regulation of ATA's stop-loss insurance policy, the basic relief ATA had sought was obtained, and it appeared to have no valid reason to appeal and it did not do so. At that point, the case was over, finished, completed, final, and both parties were bound by the result that had been reached.

This result is consistent with our longstanding rule that "the right to appeal is entirely statutory and not a right vested in the United States or Kansas Constitutions. Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken within the

time limitations and the manner prescribed in the applicable statutes." *Little Balkans Foundation, Inc. v. Kansas Racing Comm'n,* 247 Kan. 180, 188, 795 P.2d 368 (1990); accord *Tobin Constr. Co. v. Kemp,* 239 Kan. 430, 437, 721 P.2d 278 (1986).

When the 1997 Kansas Legislature added subsection (b) to K.S.A 40-2201 (L. 1997, ch. 190, § 24) and this provision became effective July 1, 1997, an entirely new issue came into existence between ATA and the Commissioner.

ATA timely requested an administrative hearing before the Kansas Insurance Department, and in its docketing statement filed in this appeal, when responding to the question of whether there are proceedings in any other court or administrative agency, state or federal, which might affect this case or the court having jurisdiction, properly answered "yes" and identified the following administrative proceedings:

"Before the Kansas Insurance Department
In re Protective Life Insurance Company and American Trust
Administrators, Inc.
Docket No. 2336-F."

The Court of Appeals issued a show cause order as to why the appeal in the case before us should not be dismissed for the failure to timely appeal from the April 27, 1997 order. After a response by ATA, this appeal was retained with the issue ordered to be addressed in briefs and arguments on appeal. The jurisdictional issue that was not raised by the Court of Appeals or properly considered, in my view, was the pending administrative proceeding relating to the 1997 legislative amendments.

ATA attempted to bypass and not allow the required administrative proceeding to proceed to hearing and determination by filing the December 17, 1997, motion for an order to appear and show cause why the Commissioner should not be held to be in contempt for her refusal to abide by the April 25, 1997, order.

This filing was improper, without jurisdiction, and an attempt to violate our longstanding rule requiring parties to exhaust all of their available administrative remedies before turning to the courts for redress. See K.S.A. 77-612; Ryan, *The New Kansas Administrative Procedure and Judicial Review Acts,* 54 J.K.B.A. 53, 64 (1985).

The trial court, by failing to dismiss ATA's request to involve the court's contempt powers, appears to have interpreted the 1997 amendment as granting the Commissioner authority to regulate stop-loss insurance. And, while the majority herein says that we do not decide that issue, our affirmance of the January 29, 1998, and March 2, 1998, trial court orders appears to uphold that decision. This clearly bypasses administrative proceedings and violates our longstanding rule requiring exhaustion of administrative proceedings.

I do not question that *Smith v. Clothier*, 113 Kan. 47, 54-55, 213 Pac. 1071 (1923), and *Hendrix v. Consolidated Van Lines, Inc.*, 176 Kan. 101, 111, 269 P.2d 435 (1954), do hold that one may appeal from a judgment of not guilty in a civil contempt proceeding. But, these decisions are entirely different factually and should not be the basis for justifying this appeal where jurisdiction over the case is lost, new facts in the nature of the legislative action came into existence, and a failure to exhaust administrative proceedings is shown.

I would hold that ATA's appeal should be dismissed as being without jurisdiction as to any of the issues it attempts to raise.

McFARLAND, C.J., and LOCKETT, J., join in the foregoing concurring and dissenting opinion.