No. 86,801

AMERICAN TRUST ADMINISTRATORS, INC., *Appellant/Cross-appellee*, v. KATHLEEN SEBELIUS, as the Commissioner of Insurance for the State of Kansas, *Appellee/Cross-appellant*.

(44 P.3d 1253)

Opinion filed April 26, 2002.

*Justin T. Liby,* Liby & McVay, L.L.C., of Kansas City, Missouri, argued the cause and was on the briefs for appellant/cross-appellee.

*Rebecca A. Sanders*, Kansas Insurance Department, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

DAVIS, J.: American Trust Administrators, Inc. (ATA) appeals the district court's decision affirming the final decision of the Commissioner of Insurance (Commissioner) to withdraw approval of ATA's stop-loss insurance policy.

ATA argues: (1) The Commissioner does not have jurisdiction to regulate stop-loss policies; (2) the Commissioner's regulation fails to comply with the Kansas statutory rules governing regulatory procedure; (3) the regulation is an unconstitutional delegation of legislative power; and (4) federal law preempts the Commissioner's regulation of the policy. The Commissioner cross-appeals, contending that ATA is collaterally estopped from asserting the preemption issue.

We hold: (1) The Commissioner has statutory authority under K.S.A. 40-2201(b) to require minimum attachment points for stop-loss insurance policies; and (2) the Commissioner's attempt to reg-

ulate stop-loss policies is void for failure to comply with K.S.A. 77-415 *et seq.*

## FACTS

The facts are undisputed, but procedurally involved. The case involves the authority, both constitutional and statutory, of the Commissioner to regulate stop-loss insurance offered to "self-funded" employer health plans. ATA presently appeals for the second time from litigation against the Commissioner. See *American Trust Administrators, Inc. v. Sebelius*, 267 Kan. 480, 981 P.2d 248 (1999) (*American Trust I*). *American Trust I* provides useful background information on the nature of the insurance being regulated and the underlying substantive dispute between the parties.

ATA seeks to gain the Commissioner's approval of its stop-loss insurance policy. ATA's policy has an attachment point of zero. The Commissioner, in her July 6, 1995, letter, refused to approve ATA's policy. She based her refusal on bulletins "1993-12" and "1993-12 Addendum." The bulletin 1993-12 contains the following criteria for the sale of stop-loss insurance:

"1.   The stop loss or excess loss policy shall be issued to and insure the plan or plan sponsor, not the individual participants.

"2.   Payment by the insurer shall be made to the plan sponsor or the plan itself, not the employees, members, participants, or providers.

"3.   The threshold for specific stop loss coverage shall be no less than $10,000 per individual participant.

"4.   The threshold for aggregate stop loss coverage shall be no less than 120% of expected claims.

"5.   The stop loss policy shall contain a provision that the plan's or the plan sponsor's bankruptcy or insolvency will not relieve the stop loss insurer from its obligation pay claims under the stop loss policy.

"6.   The claim settlement period may be no less favorable than a $12/13$ (incurred in 12/paid in 13)."

*American Trust I* and the present appeal represent two separate actions for judicial review of an administrative action. In *American Trust I*, ATA petitioned the Shawnee District Court following ATA's failure to reverse by administrative means the Commissioner's disapproval of its policy. ATA argued to the Shawnee District Court that (1) the federal Employee Retirement Income Se-

curity Act of 1974 (ERISA) preempted the Commissioner's ability to regulate stop-loss insurance; (2) the Commissioner did not have statutory authority to regulate stop-loss insurance; and (3) the Commissioner's regulation was arbitrary and capricious. The district court disagreed, holding that the Commissioner was not preempted from regulation of stop-loss insurance; however, she lacked statutory authority to do so. Thus, ultimately, the court held, the Commissioner was precluded from regulating ATA's stop-loss insurance. The Shawnee District Court did not reach the issue of whether the regulation was arbitrary and capricious.

Months after the Shawnee District Court's decision, the legislature adopted L. 1997, ch. 190, sec. 24, presumably to grant the Commissioner authority to regulate stop-loss insurance—a matter disputed in the present appeal. The amended statute, with the amended language represented by italics, reads as follows:

"K.S.A. 40-2201 is hereby amended to read as follows: 40-2201. (a) The term 'policy of accident and sickness insurance' as used herein includes any policy or contract issuing against loss resulting from sickness or bodily injury or death by accident, or both, issued by a stock, or mutual company or association or any other insurer.

"*(b) The term 'policy of stop loss or excess loss insurance coverage' means a policy, contract, endorsement, attachments, amendments or other modifications that insure against losses of the policyholder issued by a stock, or mutual company or association or any other insurer.*" L. 1997, ch. 190, § 24.

Following the legislature's amendment, the Commissioner proceeded to regulate ATA's stop-loss insurance, believing the amendment granted her the necessary authority. 267 Kan. at 484.

ATA responded to the Commissioner's further attempts at regulation in two ways. First, ATA initiated a new administrative hearing. This new administrative hearing, eventually put on hold pending the appeal in *American Trust I*, proceeded to the Johnson District Court, forming the basis for the appeal here. Second, ATA responded to the Commissioner's further attempts at regulation of stop-loss insurance by moving the Shawnee District Court to hold the Commissioner in contempt for continuing to regulate stop-loss insurance in violation of the district court's earlier ruling. The Shawnee District Court denied the motion to hold the Commis-

sioner in contempt, implying the amendment granted the Commissioner authority to regulate stop-loss insurance. ATA appealed, resulting in *American Trust I*.

In *American Trust I*, ATA argued that (1) the Commissioner did not have statutory authority to regulate stop-loss insurance; and (2) the district court erred in failing to find ERISA preempted the Commissioner's attempts to regulate. *American Trust I* did not reach either of these issues, which are now advanced by ATA in the present appeal. Instead, *American Trust I* held ATA failed to timely appeal from the district court's decision regarding the preemption argument, and therefore we had no jurisdiction to consider whether ERISA preempted the Commissioner's regulation of stop-loss insurance. *American Trust I* also considered whether the district court was correct in not holding the Commissioner in contempt for continuing to regulate stop-loss insurance following the first judgment. In reaching the contempt issue, the majority, to the extent necessary under the abuse of discretion standard of review appropriate for reviewing contempt decisions, determined whether the lower court's statutory interpretation of K.S.A. 40-2201 was reasonable. We affirmed the district court's failure to hold the Commissioner in contempt. We held the district court's "well-reasoned opinion," which interpreted the Commissioner's statutory authority, was correct for contempt purposes. 267 Kan. at 490.

### The Johnson County Case

With *American Trust I* resolved, ATA continued prosecuting its second administrative action, which had been halted pending resolution of the appeal in *American Trust I*. The Commissioner, in her initial order, concluded (1) ATA was barred by the res judicata doctrine from asserting the preemption argument; (2) the Commissioner's bulletins were not void for failing to comply with K.S.A. 77-415 *et seq.*; and (3) the Commissioner has statutory authority under the amended statutes to regulate stop-loss insurance. The Commissioner issued her final order on June 8, 2000, summarily affirming the initial order.

ATA appealed the final order with a petition for judicial review. ATA argued (1) the Commissioner lacked statutory authority to regulate stop-loss insurance; (2) the Commissioner failed to follow the procedure in K.S.A. 77-415 *et seq.* for the promulgation of administrative rules and regulations; (3) ATA was not collaterally estopped from asserting the preemption issue; and (4) the Commissioner's regulation of stop-loss insurance was preempted by ERISA. The district court rejected all of ATA's arguments, except the collateral estoppel argument. ATA appealed, raising the issues presently before us. The Commissioner cross-appealed on the collateral estoppel issue.

## DISCUSSION

### *Statutory Authority to Regulate Stop-Loss Insurance*

ATA argues the Commissioner is without statutory authority to regulate stop-loss insurance. As head of an agency, the Commissioner's authority is limited by law: "Administrative agencies are creatures of statute and their power is dependent upon authorizing statutes, therefore any exercise of authority claimed by the agency must come from within the statutes. There is no general or common law power that can be exercised by an administrative agency." *Pork Motel, Corp. v. Kansas Dept. of Health & Environment,* 234 Kan. 374, 378, 673 P.2d 1126 (1983).

ATA argues Kansas statutes, including the 1997 amendment to K.S.A. 40-2201 (Furse 1993), do not grant the Commissioner the authority to regulate stop-loss insurance. ATA explains the amendment to K.S.A. 40-2201 (Furse 1993) merely defines stop-loss insurance without bringing that definition within the realm of the Commissioner's control. The Commissioner responds to ATA's argument by asserting three distinct arguments: (1) Kansas statutes generally grant the Commissioner authority to regulate stop-loss insurance; (2) the amendment to K.S.A. 40-2201 (Furse 1993) specifically grants the Commissioner authority to regulate stop-loss insurance; and (3) the stop-loss insurance at issue is in substance insurance as defined in K.S.A. 40-2201(a), over which the legislature has given the Commissioner clear authority to regulate.

The interpretation of statute is a question of law over which this court exercises unlimited review. *Babe Houser Motor Co. v. Tetreault,* 270 Kan. 502, 506, 14 P.3d 1149 (2000). The Commissioner relies on K.S.A. 40-102 and K.S.A. 40-103 to argue the legislature has generally conferred the authority necessary to regulate stop-loss insurance. This argument is not persuasive.

Highly summarized, K.S.A. 40-102 merely requires to Commissioner to be responsible for the "administration of all laws relating to insurance, . . . and all other duties which are or may be imposed . . . by law." Implicit in this grant of authority is the existence of "laws" and "other duties," which are presumably to be found elsewhere in the statutes. In looking for the legislature's grant of authority to the Commissioner to regulate stop-loss insurance, K.S.A. 40-102 sends the reader looking elsewhere. K.S.A. 40-102 by itself does not give the Commissioner specific authority.

The Commissioner also asserts K.S.A. 40-103 grants the authority to regulate stop-loss insurance. True, K.S.A. 40-103 gives the Commissioner powers of "supervision, control and regulation of corporations . . . authorized to transact the business of insurance," but that power is qualified by the phrase, "necessary to enforce the laws of this state relating thereto." Therefore, the reader of K.S.A. 40-103 must also look elsewhere to discern the substance of what powers the Commissioner is given. This view was also taken by the Court of Appeals in *Durrett v. Bryan,* 14 Kan. App. 2d 723, 728, 799 P.2d 110 (1990) ("[K.S.A. 40-103] expressly provides, however, only the power to make regulations necessary to enforce the laws relating to supervision of insurance, *i.e.,* some other statute must first provide more specific basis for authority before this statute comes into play.").

The real issue here involves the amendment to K.S.A. 40-2201 (Furse 1993), which added subsection (b). See L. 1997, ch. 190, sec. 24. K.S.A. 40-2201 now contains the following definitions:

"(a) The term 'policy of accident and sickness insurance' as used herein includes any policy or contract insuring against loss resulting from sickness or bodily injury or death by accident, or both, issued by a stock, or mutual company or association or any other insurer.

"(b) The term 'policy of stop loss or excess loss insurance coverage' means a policy, contract, endorsement, attachments, amendments or other modifications that insure against losses of the policyholder issued by a stock, or mutual company or association or any other insurer."

The Commissioner argues the amendment clearly grants authority to regulate stop-loss insurance. Furthermore, the Commissioner argues any other interpretation would render the statute meaningless. ATA, on the other hand, asserts the alternative interpretation that the legislature defined stop-loss insurance in order to exclude such insurance from the Commissioner's reach and that such interpretation is at best just as likely as the Commissioner's.

Thus, the proper interpretation of K.S.A. 40-2201(a) and (b) is, on its face, uncertain. If the meaning of the statute cannot be determined by looking at the plain and unambiguous language, then we may "look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000).

As *Robinett* instructs, the current analysis should consider the historical background of the legislative amendment. At the time of the amendment, the Shawnee District Court had ruled the Commissioner did not have authority under Kansas statutes to regulate stop-loss insurance. It is logical to conclude the legislature amended 40-2201 in response to the Shawnee District Court order. Further, it is logical to conclude the purpose of the amendment was to give the authority to the Commissioner that the district court had said did not exist. The session law in issue, L. 1997, ch. 190, sec. 24, was also known as Senate Bill 204. The language in the session law containing the amendment to 40-2201 did not appear until after the Shawnee District Court's April 25, 1997, memorandum decision. For example, the form of the Senate Bill 204 as reported on March 24, 1998, only contained 15 sections but did not yet contain § 24. House J., 1997, pp. 539-40. The next time Senate Bill 204 appears in either the House or Senate Journals with the amendment affecting 40-2201 was the report of the conference committee on May 3, 1997. House J., 1997, pp. 958-68.

ATA argues that if the legislature's amendment was in response to the Shawnee District Court's decision, it does not follow that the legislature responded intending to change the law, *i.e.* the legislature might have intended to memorialize what the district court had established. When a legislature revises an existing law, it is presumed that the legislature intended to change the law. *Board of Sedgwick County Comm'rs v. Action Rent to Own, Inc.,* 266 Kan. 293, 304, 969 P.2d 844 (1998). However, this presumption may be weak according to the circumstances and may be wanting altogether. 266 Kan. at 304. "The presumption is fairly strong in the case of an isolated, independent amendment, but is of little force in the case of amendments adopted in a general revision or codification of the law." *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.,* 231 Kan. 731, 736, 648 P.2d 1143 (1982).

Assuming the presumption applies here, and there is no reason to believe it does not given the amendment is "isolated and independent," the amendment is interpreted as granting the Commissioner authority to regulate stop-loss insurance. Assuming the opposite conclusion, *i.e.* the legislature intended for the Commissioner not to have such authority, would render the amendment meaningless. There is a presumption the legislature does not enact meaningless legislation. *KPERS v. Reimer & Koger Assocs., Inc.,* 262 Kan. 635, 643, 941 P.2d 1321 (1997). At the time of the amendment, the district court had already ruled, issuing an injunction barring the Commissioner from regulating the insurance. As a practical matter, there was nothing for the legislature to do if the Shawnee District Court's decision was the outcome it desired.

The legislature's amendment to 40-2201 gives the Commissioner the authority to regulate stop-loss insurance.

### Definition of "Rule" and "Regulation"

Next, ATA argues the regulation of stop-loss insurance is void because the bulletins fail to comply with K.S.A. 77-415 *et seq.* The Commissioner responds to ATA's argument by pointing out how K.S.A. 77-415 *et seq.* does not apply to the bulletins. The Commissioner also argues her decision refusing to approve ATA's stop-

loss policy is based on statute, rather than the bulletins; thus, if the bulletins are void for failure to comply with K.S.A. 77-415 *et seq.*, the disapproval of the policy is still valid because it was based on statute. We disagree.

K.S.A. 77-415 *et seq.* governs the procedures for state agencies in promulgating regulations. K.S.A. 77-425 provides:

"Every rule and regulation other than a temporary rule and regulation which is filed by a state agency in the office of the secretary of state as provided in this act shall have the force and effect of law on and after the date prescribed in K.S.A. 77-426, and amendments thereto, until amended or revoked as provided by law and such amendment or revocation shall have become effective. *Any rule and regulation not filed and published as required by this act shall be of no force or effect,* except that any error or irregularity in form or any clerical error or omission of the secretary of state in the filing of such regulation not affecting substantial rights shall not invalidate the same." (Emphasis added.)

The terms "rule" and "regulation" are statutorily defined as

"a standard, statement of policy or general order, including amendments or revocations thereof, of general application and having the effect of law, issued or adopted by a state agency to implement or interpret legislation enforced or administered by such state agency or to govern the organization or procedure of such state agency. Every rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act." K.S.A. 77-415(4).

In *Bruns v. Kansas State Bd. of Technical Professions,* 255 Kan. 728, 877 P.2d 391 (1994), we considered when the statute required a written administrative agency policy to be filed and published. In agreeing that a "rule or regulation" within the definition of K.S.A. 77-415 was at issue, the *Bruns* opinion relied on the following factors: (1) The agency did not exercise any discretion in applying the written policy; (2) the rule had general application to those having to do business with the agency; and (3) the agency treats its internal policy as "having the effect of law." 255 Kan. at 733-34.

### Discretion in Applying the Written Policy

In its initial order in response to ATA's administrative challenge, the Commissioner relied on the emphasized phrase in the following sentence from its bulletin 1993-12: "A policy which fails to

satisfy the above criteria will be considered a group health insurance policy subject to insurance laws and regulations of this state *unless specifically approved by the commissioner."* (Emphasis added.)

An issue here is whether that phrase really means the Commissioner will exercise discretion. The record does not indicate whether the Commissioner will exercise any discretion in approving stop-loss policies not meeting the requirements in the bulletins. As discussed below, the Commissioner's July 6, 1995, letter to ATA refused the approval of ATA's policy because the policy failed to meet the criteria contained in the bulletin. The letter fails to mention whether the Commissioner considered exercising her discretion to approve the policy despite its failure to meet the bulletin criteria. Furthermore, there is no indication what criteria the Commissioner would use in exercising discretion to approve a policy not otherwise meeting the criteria contained in the bulletin. In summary, it appears fair to conclude the Commissioner does not in fact exercise any discretion in the application of the bulletin criteria.

## General Application

The record shows bulletin 1993-12 has general application. Indeed, the bulletin is addressed to "All Insurance Companies Writing Stop Loss or Excess Loss Insurance; Registered Third Party Administrators; and Other Addressees." Thus, the bulletin applies broadly to all stop-loss insurance.

## Effect of Law

As alluded to above, the language initially used by the Commissioner to deny approval of ATA's policy in the Commissioner's July 6, 1995, letter shows the bulletins have the effect of law:

"Since it is clear from the aforementioned statement that your company will not *comply with the criteria outlined in Bulletin 1993-12,* this department does not consider your policy as a form of stop loss insurance, thus we are not in a position to approve the captioned policy for issuance in the state of Kansas." (Emphasis added.)

In arguing the applicability of *Bruns,* the Commissioner stresses how the "rule or regulation" here is not a secret internal document. True, in *Bruns* we were concerned with the public policy rational of the statute, *i.e.* the desire to make information available to the public to guide the public through the maze of state governmental regulation. While we recognize the widely distributed nature of the bulletins here, we do not believe a widely distributed bulletin is a valid substitute for a properly promulgated rule or regulation under K.S.A. 77-415 *et seq.* The fact remains the Commissioner has failed to follow the prescribed steps of promulgating policy. The Commissioner would have us adopt an exception to K.S.A. 77-415 for rules and regulations that are otherwise widely distributed. There is no authority for such an exception. Furthermore, to create one now would require courts to decide in future cases the standard for the exception, whereas now there is clear statutory guidance on how to promulgate rules and regulations. The Commissioner's argument is rejected.

### Statutory Authority

Next, the Commissioner argues that whether the bulletins are void is irrelevant because the regulation is prescribed in K.S.A. 40-2201(b), not the bulletins. This argument confuses a grant of authority with the specific regulation at issue. Here, it is clear the rule or regulation that will govern how the Commissioner treats stop-loss insurance policies is contained in the bulletin, not the statutes. The Commissioner cites no authority for the proposition that a general grant of authority to regulate is an exception to the requirements contained at K.S.A. 77-415 *et seq.*, and its argument is therefore rejected.

### Delegation of Power

ATA also argues the regulation of stop-loss insurance is an unconstitutional delegation of power. The record shows that ATA failed to raise the improper delegation of power argument it its petition for review. "Issues not raised before the trial court cannot be raised for the first time on appeal. A new legal theory may not be asserted for the first time on appeal or raised in a reply brief."

*Wood v. Groh,* 269 Kan. 420, 433-34, 7 P.3d 1163 (2000). We decline to address an issue for the first time on appeal.

## *ERISA*

Our resolution of the K.S.A. 77-415 issue results in bulletin 1993-12 having no force, in effect leaving no regulation to be pre-empted by ERISA. Therefore, the ERISA preemption issue is not properly before us. Our reversal is based on the Commissioner's use of a general bulletin rather than a K.S.A. 77-415(4) rule or regulation. We remand with instructions to enter judgment in favor of ATA.