(88 P.3d 250)
No. 90,453

HALLMARK CARDS, INC., *Appellant*, v. KANSAS DEPARTMENT OF COMMERCE AND HOUSING, *Appellee*.

Opinion filed April 23, 2004.

*Mark A. Burghart*, of Alderson, Alderson, Weiler, Conklin, Burghart & Crow, L.L.C., of Topeka, for appellant.

*Robert E. North*, of Department of Administration, of Topeka, for appellee.

Before RULON, C.J., GREENE, J., and ROGG, S.J.

GREENE, J.: Hallmark Cards, Inc. (Hallmark) seeks judicial review of a decision of the Kansas Department of Commerce & Housing (Department) that found Hallmark ineligible for an income tax credit pursuant to K.S.A. 79-32,160a(e), the Kansas High Performance Incentive Program (HPIP) for tax years 1995 and 1996. Hallmark contends generally that both the Department and the district court misconstrued or misapplied the statutory requirements for HPIP participation and that Hallmark received disparate treatment when compared to other applicants. We reverse and remand to the district court with directions to remand to the Department for certification of Hallmark for HPIP tax credits, holding that the Department's failure to promulgate objective regulatory requirements for program eligibility coupled with the Department's practice of employing unduly subjective and inconsistent criteria for eligibility fail to support the denial of Hallmark's certification for the program.

### Factual and Procedural Overview

Hallmark applied retroactively in 1999 with the Department for certification of HPIP participation necessary to receive tax credits for certain qualified business facility investments made during tax years 1995, 1996, and 1997. The Department granted certification

for tax year 1997 but denied Hallmark's eligibility for tax years 1995 and 1996, stating:

"With respect to the investment in question, your client was unaware of HPIP tax incentives. Therefore company decisions to expand the scope of the investment cannot have been influenced by the existence of HPIP benefits. With this in mind, HPIP certification cannot be extended to the company, prior to the point when it became aware of the program. For these reasons, we are rejecting this request for HPIP certification for calendar 1995 and calendar 1996."

Hallmark filed its first petition for judicial review upon receipt of the Department's action, contending that it was indeed aware of HPIP prior to making the capital investments at issue and that the Department had exceeded its statutory authority and discriminated against Hallmark in creating eligibility criteria beyond the statute and the regulations. The district court held that the Department had statutory authority for requiring *both* prior knowledge of HPIP and reliance thereon as prerequisites for eligibility under the statutory scheme. The court remanded the matter to the Department for development of a record on Hallmark's program eligibility.

On remand, Hallmark moved for summary judgment, framing three issues: (1) whether the Department's interpretation of the statutory authority for the HPIP was erroneous; (2) whether the foreknowledge requirement was applied equally to all other applicants; and (3) whether Hallmark in fact was aware of the HPIP prior to making investment decisions in 1995 and 1996. The Department's hearing officer found that Hallmark was ineligible for HPIP benefits because "[t]here is no evidence that those at Hallmark with authority to authorize capital expenditures had foreknowledge of HPIP in 1995 and 1996."

Hallmark then filed its second petition for judicial review, contending that the Department's hearing officer continued "to deny Petitioner tax benefits to which it is entitled under K.S.A. 79-32,160a(e)." The district court affirmed the hearing officer, and Hallmark appeals all administrative decisions and both district court orders.

*Standard of Review*

Our standard of review, as specified in K.S.A. 77-621, requires

this court to grant relief where, *inter alia*, the agency has erroneously interpreted or applied the law, has engaged in an unlawful procedure or has failed to follow prescribed procedure, or has made a determination of fact that is not supported by evidence that is substantial when viewed in light of the record as a whole. K.S.A. 77-621(c)(4), (5), and (7). The statute also requires us to grant relief where the agency action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(8); see *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n.*, 242 Kan. 470, 474, 749 P.2d 21 (1988).

Interpretation of a statute is a question of law over which this court exercises unlimited review. *Matjasich v. Kansas Dept. of Human Resources*, 271 Kan. 246, 250-51, 21 P.3d 985 (2001). As this appeal involves in part the interpretation of statutory language by an administrative agency, the doctrine of operative construction is applicable. Under this doctrine, "the interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference." 271 Kan. at 250. The doctrine is not without limits because the prior agency determination, "while persuasive, is not binding on the court." 271 Kan. at 250.

In reviewing the district court's actions in such matters, we must first determine whether the district court observed the requirements and restrictions placed upon it by the statute and then apply the same standards as the district court in reviewing the administrative tribunal's action. *Kansas Dept. of Health & Environment v. Banks*, 230 Kan. 169, Syl. ¶ 2, 630 P.2d 1131 (1981).

### The Statutory Scheme for HPIP Tax Credits

When Hallmark filed its applications in 1999 for HPIP certification, the operative statute was K.S.A. 1999 Supp. 79-32,160a(e), which provided:

"(e) Notwithstanding the foregoing provisions of this section, any taxpayer qualified and *certified under the provisions of K.S.A. 1999 Supp. 74-50,131*, and amendments thereto, and that *has received written approval from the secretary of commerce and housing for participation* and has participated, during the tax year for which the exemption is claimed, in the Kansas industrial training, Kansas industrial retraining or the state of Kansas investments in lifelong learning program or is eligible for the tax credit established in K.S.A. 1999 Supp. 74-50,132,

and amendments thereto, shall be entitled to a credit in an amount equal to 10% of that portion of the qualified business facility investment which exceeds $50,000 in lieu of the credit provided in subsection (b)(2) or (c)(2) without regard to the number of qualified business facility employees engaged or maintained in employment at the qualified business facility. The credit allowed by this subsection shall be a one-time credit" (Emphasis added.)

K.S.A. 1999 Supp. 74-50,131 contained extensive threshold eligibility criteria for certification and also provided:

"(g) The secretary of commerce and housing shall certify annually to the secretary of revenue that a firm meets the criteria for a qualified firm and that the firm is eligible for the benefits and assistance provided under the act. *The secretary of commerce and housing shall publish rules and regulations for the implementation of this act.*" (Emphasis added.)

The regulations promulgated by the Department in 1993 pursuant to this statute remained in effect in 1999 and specified eligibility criteria and application procedures at K.A.R. 110-6-1 *et seq.* Although the statutory criteria and the regulatory criteria for certification are both detailed and extensive, neither contains an express or implied requirement for eligibility that an applicant show foreknowledge of the HPIP and reliance on the program at the time of the relevant investment. The Department argues, however, that any such express requirement was unnecessary given the obvious legislative intent for the HPIP to be an "incentive" program.

The statutory scheme was amended in 2000 at the behest of the Department after the dispute with Hallmark had become apparent. The amendments consisted of isolated revisions to both K.S.A. 74-50,131 and K.S.A. 79-32,160a(e). See L. 2000, ch. 157, secs. 8 and 9. *First,* the Department sought to "clarify that benefits are not intended for investment which occurred prior to knowledge of the program" by the following italicized revision to K.S.A. 79-32,160a(e):

"(e) Notwithstanding the foregoing provisions of this section, any taxpayer qualified and certified under the provisions of K.S.A. 1999 Supp. 74-50,131, and amendments thereto; *which, prior to making a commitment to invest in a qualified Kansas business, has filed a certificate of intent to invest in a qualified business facility in a form satisfactory to the secretary of commerce and housing;* and . . . ." L. 2000, ch. 157, sec. 9.

*Second*, the legislation amended both K.S.A. 79-32,160a and K.S.A. 74-50,131 to add language "[c]ommencing after December 31, 1999," thus, apparently limiting the revisions to prospective application. See L. 2000, ch. 157, secs. 8 and 9.

The Department argues that the 2000 revisions were intended to clarify existing law, but Hallmark argues that they must be presumed to have changed prior law, citing *American Trust Administrators, Inc. v. Sebelius,* 273 Kan. 694, 701, 44 P.3d 1253 (2002). Hallmark also suggests that the revisions provide "compelling evidence that the Department was exceeding its statutory authority for tax years 1995 and 1996 when it imposed its prior knowledge and reliance standard without the benefit of statutory or regulatory authorization."

With this statutory framework and legislative history firmly in mind, we analyze the arguments of the parties.

*Did the Department and the District Court Misconstrue the Statutes in Requiring Foreknowledge and Reliance for HPIP Eligibility?*

In interpreting statutes, the intent of the legislature governs when that intent can be ascertained from the statute. When a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. *In re Marriage of Killman,* 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). Courts are not limited to a mere consideration of the language used but may also look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions urged. *In re Tax Appeal of Univ. of Kan. School of Medicine,* 266 Kan. 737, 749-50, 973 P.2d 176 (1999). Although the heading or title given an act of the legislature forms no part of the statute itself, the language of the title cannot be ignored as an aid in determining legislative intent. *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 846, 610 P.2d 1107 (1980).

When enacted in 1993, the legislation first establishing the HPIP was titled: "An Act relating to economic development to increase

the competitiveness of Kansas firms and *foster* increased investments in worker training and education; providing business assistance and income and sales tax *incentives* for certain qualified firms. . . ." (Emphasis added.) L. 1993, ch. 172. A primary advocate for the HPIP legislation explained the purpose of the legislation in written testimony, as follows:

"The proposed legislation would provide a new and innovative approach toward business *incentives* and assistance for existing and new Kansas firms to provide substantial support to firms that strive toward high performance. We are not aware of any comparable, precedent legislation in other states. This would be accomplished by rewarding 'qualified firms' with significantly higher levels of tax credits and other direct business assistance. The concept is *to encourage* firms that adopt a dual investment strategy of simultaneously increasing their levels of technology and upgrading their workforce." Minutes, Senate Comm. on Commerce, January 25, 1993 (S.B. 73).

"Costs are dependent on the number of firms that qualify and the dollar size of their investments and profits. It is clear that this bill will *stimulate* additional investment by Kansas firms—investments unlikely to occur without this legislation. Costs of the proposal should be considered against the increased revenues that will be received from the business retention and expansion that will occur as a result of the program." (Emphasis added.) Minutes, House Comm. on Taxation, March 24, 1993 (Sub. S.B. 73).

Additional legislative history is quite compelling on the issue of intent to create an incentive program rather than an entitlement program. Witnesses further testified before the legislative committees that the program would authorize "tax incentives" to businesses and would "provide a valuable tool to retain existing businesses to help them expand, to encourage them to invest in their workforce and to pay higher wages."

Notwithstanding legislative history, Hallmark argues that the statutes should be construed *in pari materia* with a host of other tax credit statutes, none of which require foreknowledge and reliance. In support of this argument, Hallmark cites K.S.A. 74-8301 *et seq.* (Venture Capital Credit); K.S.A. 79-32,153 *et seq.* (Job Expansion and Investment Credit Act of 1976); K.S.A. 79-32,160a (Enterprise Zone Income Tax Credits); K.S.A. 79-32,175 *et seq.* (Handicapped Accessibility Credit); K.S.A. 79-32,182 (Research and Development Credit); K.S.A. 79-32,190 (Child Day Care

Credit); K.S.A. 79-32,192 (Postconsumer Waste Credit); K.S.A. 79-32,194 *et seq.* (Community Service Contribution Credit); K.S.A. 79-32,202 (Credit for Adoption Expenses), all of which contain similar tax credit provisions but none of which has been administered to require foreknowledge or reliance for eligibility. The Department argues that the doctrine of in pari materia is only applicable to statutes relating to the same subject matter and that this is not the case in comparing pure tax credit schemes administered by the Kansas Department of Revenue to the certification process that is a prerequisite to eligibility for the HPIP. We conclude that Hallmark's in pari materia argument is of little assistance since the certification requirements of K.S.A. 79-32,160a(e) are unique, thus obviating any need to reconcile or bring into workable harmony the plethora of similar tax credit legislation. See *Petty v. City of El Dorado*, 270 Kan. 847, 852, 19 P.3d 167 (2001); *Graham v. Corporon*, 196 Kan. 564, 570, 413 P.2d 110 (1966).

Finally, we turn to the 2000 amendments and conclude that it is very difficult to ascertain whether they were intended to clarify existing law or to change prior law. See L. 2000, ch. 157. When the legislature revises an existing law, it is generally presumed that the legislature intended to change the law. *Board of Sedgwick County Comm'rs v. Action Rent to Own,* Inc., 266 Kan. 293, 304, 969 P.2d 844 (1998). This presumption, however, may be weak according to the circumstances and may be wanting altogether. *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.,* 231 Kan. 731, 736, 648 P.2d 1143 (1982). When a statute is ambiguous, an amendment may indicate a legislative purpose to clarify the ambiguities in the statute rather than to change the law. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas,* 275 Kan. 763, 773, 69 P.3d 1087 (2003).

As noted above, the Department sought the legislative change in 2000. Minutes of the House Committee on Economic Development, March 14, 2000 (H.B. 3010), reflect the following summary of the Department's position:

"[A]nd secondly this bill addresses the department's concern regarding inquiries from those that they feel want to access the program on a retroactive basis, when we have had no knowledge of their interest or investment until after the fact. This

program is meant to be an incentive and awarding credits after the fact defeats the purpose."

We understand that the Department's efforts may be viewed as rather self-serving, since the dispute with Hallmark was already brewing, but it is difficult for us to square the legislative history in both 1993 and 2000 with Hallmark's position that the later amendments were intended to *change* existing law. We conclude that the presumption of change rather than clarification either should not be applied or is overcome by the strength of legislative history in this case. We conclude that the 2000 amendments made explicit the implicit intent of the prior version.

Although the original statutes and all amendments until the 2000 revisions failed to specify any express eligibility requirements of program foreknowledge and reliance in the investment decision, we believe that such requirements would have been entirely consistent with the purpose of the legislation. Accordingly, if such requirements had been set forth as objective eligibility criteria in the implementing regulations, such regulations would clearly have been within the authority of the Department. Unfortunately for the Department, no such regulations were ever promulgated even though the statute contained a clear command to promulgate regulations.

Since we have concluded that the legislation was not inconsistent with additional regulatory requirements of this nature, we must examine the record to determine whether the Department consistently and uniformly applied internal policy or unwritten standards requiring such a showing for eligibility, see *In re Tax Appeal of Morton Thiokol, Inc.*, 254 Kan. 23, 30-33, 864 P.2d 1175 (1993), and whether the Department's application of such standards was discriminatory to Hallmark.

*Did the Department Consistently and Uniformly Apply an Internal Policy Requiring Foreknowledge and Reliance for HPIP Certification Eligibility?*

Hallmark claims that even if the statute is construed as the Department urges, Hallmark was denied certification while other applicants who made a similar showing were certified by the Department and that

the absence of consistent and uniform application of the Department's unwritten and informal standards has constitutional implications.

Obviously, the preferred approach to establishing criteria for licensing or certification by an agency is through formal rules. When an agency is charged with implementing or interpreting legislation, especially when the agency is administering a licensing or certification statute, fundamental fairness and due process generally dictate that any "standard" or "statement of policy" be expressed in a rule or regulation filed and published pursuant to law. K.S.A. 77-415 *et seq*. Members of the public, and others affected thereby, should not be subjected to critical agency rules and regulations that are known only by agency personnel. *Clark v. Ivy*, 240 Kan. 195, 206, 727 P.2d 493 (1986).

Notwithstanding this general preference for rulemaking, there can be no rigid requirement for an administrative agency to promulgate rules to fill *all* the interstices of statutes so administered, since this would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise. *Securities Comm'n v. Chenery Corp.*, 332 U.S. 194, 203, 91 L. Ed. 1995, 67 S. Ct. 1575 (1947). In determining whether an agency may proceed absent rulemaking, it is critical that informal standards are a natural interpretation of the statute, are applied with consistency, and do not reflect a change in policy of general application. See *Morton Thiokol*, 254 Kan. at 32-33. An agency must always proceed by rulemaking if it seeks to change the law and establish rules of widespread application. See K.S.A. 77-415 *et seq*.; *Bruns v. Kansas State Bd. of Technical Professions*, 255 Kan. 728, 733-37, 877 P.2d 391 (1994). Any rule or regulation as defined by K.S.A. 77-415(4) "shall be of no force and effect" absent filing and publication pursuant to the Act. K.S.A. 77-425.

In the absence of rules, however, due process requires the agency to demonstrate that its internal and written standards of eligibility for statutory benefits are objective and ascertainable and that they are applied consistently and uniformly. See *White v. Roughton*, 530 F.2d 750, 753-54 (7th Cir. 1976); *Holmes v. New York City Housing Authority*, 398 F.2d 262, 265 (2d Cir. 1968); *Baker-Chaput v. Cammett*, 406 F. Supp. 1134, 1139-40 (D.N.H.

1976). Where disparity in outcome among applicants for administrative certification or licensing is the result of intentional systematic unequal treatment by the agency, the Equal Protection Clauses of the federal and state Constitutions are implicated. *In re Tax Appeal of City of Wichita*, 274 Kan. 915, 920-22, 59 P.3d 336 (2002). Accordingly, we believe that both due process and equal protection concerns require that an administrative agency charged with administering a statutory certification program must demonstrate that any unwritten standards which have not been made explicit in the statute or regulations are applied consistently and uniformly.

Some courts have held that where the statute itself contains a clear command that the agency proceed by rulemaking, failure to promulgate regulations specifying comprehensive and complete standards coupled with an application of informal standards on a case-by-case basis, may lead to the agency action being stricken as arbitrary, capricious, and otherwise not in accordance with law. See, *e.g.*, *Ethyl Corp. v. E.P.A.*, 306 F.3d 1144, 1149-50 (D.C. Cir. 2002). Here, the legislature has explicitly directed that the Department "shall publish" rules and regulations to implement the statute. Given this clear legislative mandate, we must hold the Department to an even higher level of scrutiny in determining whether its internal and unwritten standards have been consistently and uniformly applied.

Having determined the required legal analysis, examination of the record reveals the following key uncontroverted facts or admissions by the Department that are critical to our inquiry:

(1) The Department had no written standards for what constituted sufficient evidence of foreknowledge.

(2) To establish foreknowledge, the Department accepted statements from attorneys, certified public accountants, controllers, special project managers, supervisors, case managers, and individuals from accounting departments. We note that the Department's willingness if not preference to accept applications from independent consulting firms seems inconsistent with the

Department's insistence that Hallmark establish specific reliance by those making the investment decision.

(3) The Department admitted that its standards to determine eligibility were "subjective decisions."

(4) Deposition testimony clearly established that, with the exception of Hallmark, the Department never required an independent showing of specific reliance and merely *assumed* reliance on a showing of foreknowledge, by indicating: "There is really no way to prove that a company has relied on the program."

(5) Even though the statute contemplates an "annual" certification, the Department determined at some time in 1997 that it was acceptable to certify retroactively. The Department admitted that when it realized that this was "a stupid error" and probably not required by the statute, it decided to "go ahead and process" such retroactive application "because they had been submitted in good faith."

(6) The record established that in at least two cases, as late as 1997, the Department certified firms for HPIP absent any requirement of foreknowledge upon a "mistaken belief" by Department officials.

(7) The Department admitted that until the Hallmark application the required demonstration of foreknowledge was "not a high priority matter in administering the program" and the information required to satisfy this showing was "minimal."

(8) Deposition testimony clearly established that the Hallmark tax manager had foreknowledge of the HPIP program due to his service on the Executive Tax Committee for the Kansas Chamber of Commerce and Industry.

(9) In its initial denial letter to Hallmark, the Department failed to mention or reference in any way whatsoever the reliance requirement; the exclusive basis for denial was Hallmark's failure to demonstrate "awareness" of the program.

(10) The Department admitted that if it had initially received the same information from Hallmark that was ultimately received, "there is some likelihood" that Hallmark would have been certified, presumably under the same "minimal" standard applied to other firms.

(11) The Department admitted that Hallmark was certified for tax year 1997 based on a contact with the Department demonstrating knowledge of the program in March of 1997, but that contact did not establish or even suggest reliance.

From these key facts, we are compelled to conclude that the Department's internal standards for determining statutory eligibility for HPIP certification were not reasonably objective, ascertainable standards, nor were they consistently and uniformly applied since program inception, thus rendering them constitutionally suspect. Especially since the legislature gave the Department a clear command to promulgate regulations to establish eligibility criteria, we decline to endorse the Department's inconsistent application of unwritten and subjective standards that proved discriminatory as to Hallmark. Such agency conduct, although perhaps not a "systematic" disparity required for a clear violation of equal protection mandates, appears entirely lacking in consistency and uniformity required to comport with due process under these circumstances. See *Holmes*, 398 F.2d at 265; *Sun Ray Dairy v. Oregon Liquor Control Comm'n.*, 16 Or. App. 63, 517 P.2d 289 (1973).

We need not ground our decision solely on this constitutional basis, however, since we also conclude that relief is required by K.S.A. 77-621(c). Here the Department was directed to promulgate regulations and failed to include some of the eligibility criteria that were only "implicit" for statutory certification. See K.S.A. 74-50,131; K.S.A. 79-32,160a(e). Moreover, the Department admitted that Hallmark's proof of the unwritten eligibility requirements was as good as that generally accepted from other applicants, but Hallmark chose to challenge the requirements, thus, provoking higher standards of eligibility than were applied to others. Under these circumstances, we conclude: (i) that the Department's failure to promulgate regulations was a failure to "follow prescribed proce-

dure," see K.S.A. 77-621(c)(5), and (ii) that the Department's action in refusing to certify Hallmark for HPIP benefits for tax years 1995 and 1996 was arbitrary, capricious, and unreasonable. See K.S.A. 77-621(c)(8); *Blue Cross & Blue Shield of Kansas, Inc., v. Praeger*, 276 Kan. 232, 275, 75 P.3d 226 (2003).

Under the facts of this case and pursuant to K.S.A. 77-622(b), we vacate the Department's actions in denying certification, reverse the Department's hearing officer, reverse the district court, and remand to the district court with directions to remand to the Department for certification of Hallmark for HPIP benefits for tax years 1995 and 1996.

Reversed and remanded with directions.