Roderick L. Bremby, Secretary
Kansas Department of Health and Environment
Curtis State Office Building
1000 SW Jackson Street, Suite 540
Topeka, Kansas 66612-1238
Dear Secretary Bremby:
As Secretary of the Kansas Department of Health and Environment (KDHE), you request an opinion whether, in the absence of federal or state regulations setting limitations for a specific pollutant, K.S.A.65-3012 authorizes the secretary to deny or modify an air quality permit, or place a stay on issuance of an air quality permit until state or federal regulations are enacted that address the pollutant.
When an application for an air quality control permit has been made, the secretary may deny the application pursuant to K.S.A. 65-3008b for specified reasons. Likewise, the secretary is authorized to take certain actions pursuant to that statute after a permit has been granted.
Alternatively, K.S.A. 65-3012 provides:
 "(a) Notwithstanding any other provision of this act, the secretary may take such actions as may be necessary to protect the health of persons or the environment: (1) Upon receipt of information that the emission of air pollution presents a substantial endangerment to the health of persons or to the environment. . . .
 "(b) The action the secretary may take under subsection (a) includes but is not limited to:. . . ."
The statute then lists actions the secretary may take, which include but are not limited to, (1) issuing an order to an owner or operator toprevent an act or eliminate a practice with respect to a facility or site, including temporary cessation of operation, (2) commencing an action, or requesting the attorney general or county attorney to commence an action, to enjoin acts or practices, and (3) applying for a court order directing compliance with the order of the secretary.
We found no appellate court decisions interpreting this statute and, thus, are left with attempting to ascertain the intent of the legislature.[1] We do so by reviewing the statutory language of K.S.A.65-3012 which is plain and unambiguous.[2]
Based upon the plain language of K.S.A. 65-3012, it appears that the statute contemplates preventive as well as remedial actions on the part of the secretary in order to protect persons and the environment in situations where the secretary receives information that emission of air pollution presents substantial endangerment to either. "Air pollution" is broadly defined as the "presence in the outdoor atmosphere of one or more air contaminants in such quantities and duration as is, or tends significantly to be, injurious to human health or welfare, animal or plant life, or property, or would unreasonably interfere with the enjoyment of life or property, or would contribute to the formation of regional haze."[3] An "air contaminant" is "dust, fumes, smoke, other particulate matter, vapor, gas, odorous substances, or any combination thereof, but not including water vapor or steam condensate."[4] Thus, as K.S.A. 65-3012 does not condition the secretary's action upon pollutant levels, the secretary is not obligated to wait until there are federal or state regulations establishing limitations on a particular pollutant before taking action to prevent air pollution provided he makes the findings required in subsection (a).
This conclusion is supported by the legislative history of K.S.A.65-3012 which, until 1993, allowed the agency to take only remedial action in situations where the appropriate agency official found that "any person is causing or contributing to air pollution and that such pollution creates an emergency which requires immediate action to protect human health or safety."[5] In such situation, the agency official, with the concurrence of the governor, could order the offender to "reduce or discontinue immediately the emission of air contaminants."[6] After an order issued, the agency was required to hold a hearing within 24 hours and issue an order affirming, modifying, or setting aside the previous order.[7]
In 1993, this verbiage was replaced in its entirety by verbiage modeled after the hazardous waste statute.[8] That statute, K.S.A.65-3419(e), allows the secretary, "upon receipt of information that the . . . disposal of any waste may present a substantial hazard to the health of persons or to the environment . . . may take such action as . . . necessary to protect the health of such persons or the environment."[9] Those actions include preventing the act or eliminating the practice constituting the hazard.[10]
KDHE Secretary Robert Harder's written testimony to the Senate Committee on Energy and Natural Resources indicated only that K.S.A.65-3012 was being amended to "update" the secretary's emergency authority by replacing "outdated language."[11] While it is not clear whether the legislature intended to enhance the secretary's authority by giving him or her the ability to take preventive action in addition to remedial action, we are mindful that when the legislature revises a law, it is presumed that the legislature intended to make a change.[12]
Therefore, we belive that the legislature bestowed upon the secretary the power to take preventive measures to address air pollution before it occurred.
In light of the plain language of K.S.A. 65-3012 and its legislative history, it is our opinion that if the secretary makes a factual determination that a particular emission constitutes air pollution and that such emission presents a substantial endangerment to the health of persons or to the environment, then even in the absence of federal or state regulations setting limitations for a particular pollutant, K.S.A.65-3012(a)(1) authorizes the secretary to take actions as necessary to protect the health of persons or the environment. Such actions may include denying an air quality permit application on the basis of anticipated emissions of a particular pollutant or modifying a proposed permit to address such pollutant.[13]
However, regarding your query whether K.S.A. 65-3012 would allow the secretary to stay issuance of a permit until such time — if ever — that state regulations are adopted addressing a particular pollutant, we have serious reservations whether such an action would survive a due process challenge[14] or a challenge based upon such action being arbitrary, capricious, and unreasonable.[15] As our opinion is limited to the very narrow question of whether K.S.A. 65-3012 authorizes certain actions, we do not speculate concerning the legal challenges an indefinite stay may generate.
Sincerely,
Paul J. Morrison
Attorney General
Camille Nohe
Assistant Attorney General
PJM:MF:jm
[1] Hallmark Cards, Inc. v. Kansas Dept. of Commerce Housing,32 Kan.App.2d 715, 721 (2004).
[2] Young v. Sedgwick County, Kan., 660 F.Supp. 918 (D. Kan. 1987).
[3] K.S.A. 2006 Supp. 65-3002(c). Emphasis added.
[4] K.S.A. 2006 Supp. 65-3002(a).
[5] L. 1967, Ch. 347, § 12. Emphasis added.
[6] Id.
[7] Id.
[8] K.S.A. 65-3419(e). Minutes, Senate Committee on Energy Natural Resources, January 21, 1993, Attachment 3.
[9] Emphasis added.
[10] K.S.A. 65-3419(e)(1). Emphasis added.
[11] Minutes, Senate Committee on Energy Natural Resources, January 21, 1993, Attachment 3.
[12] Dewey v. Kansas Dept. of Revenue, 11 Kan.App.2d 72 (1986).
[13] Any action to deny or modify a permit would trigger basic due process protections of notice and an opportunity to be heard. Rydd v.State Board of Health, 202 Kan. 712, 726 (1969) (hearing required on issues of adjudicative fact where important interests are at stake).
[14] Rydd v. State Board of Health, 202 Kan. 712, 726 (1969) (hearing required on issues of adjudicative fact where important interests are at stake). See Hallmark Cards, Inc. v. Kansas Dept. of Commerce andHousing, 32 Kan.App.2d 715 (2004) (in absence of rules, due process requires agency to demonstrate internal and written standards of eligibility for statutory benefits that are objective, ascertainable and applied consistently and uniformly).
[15] K.S.A. 77-621(a)(8).