(192 P.3d 657)
No. 98,117

IN THE MATTER OF THE APPEAL OF HALLMARK CARDS, INC.,
FROM AN ORDER OF THE DIVISION OF TAXATION REGARDING
CORPORATE INCOME TAXES FOR THE YEARS 1995 AND 1996.

Opinion filed September 19, 2008.

*Mark A. Burghart*, of Alderson, Alderson, Weiler, Conklin, Burghart & Crow, L.L.C., of Topeka, for appellant.

*David J. Dunlap*, of Kansas Department of Revenue, Legal Services Bureau, of Topeka, for appellee.

Before HILL, P.J., PIERRON and GREEN, JJ.

HILL, J: Hallmark Cards, Inc., appeals the Board of Tax Appeals (BOTA) denial of their corporate income tax refund, claiming the

Board misinterpreted their post audit settlement agreement with the Kansas Department of Revenue (KDOR) on corporate income taxes. Because their settlement agreement did not cover tax credits arising from the High Performance Incentive Program (HPIP) law, K.S.A. 79-32,160a(e), we hold the statute limits Hallmark's tax credits for a tax year to whatever their tax liability for that tax year was. The law requires any excess tax credits be carried forward into the next tax year. Therefore, we affirm the Board's ruling.

*The parties have agreed to the background facts, and their dispute centers on their contract.*

Hallmark, a Missouri corporation, does business in Kansas by creating and selling "social expression" products. Hallmark and KDOR made a tax settlement agreement on June 15, 2000. The contract settled all issues arising from an audit of Hallmark's corporate income taxes for tax years 1994, 1995, and 1996. Two continuing issues were excepted from their contract. The agreement did not apply to future adjustments to corporate income made by a federal revenue agent, sometimes called a Revenue Agent Report, or RAR, and income tax credits under the HPIP, found in K.S.A. 79-32,160a(e).

Before the agreement, in November 1999, Hallmark filed an amended corporate income tax return for tax years 1995 through 1997, seeking tax credits under the HPIP law. KDOR approved HPIP credits for Hallmark for 1997 but denied them for 1995 and 1996 because the Kansas Department of Commerce and Housing had not certified Hallmark as a qualified firm under the HPIP program for those years. Hallmark sued and, finally, in *Hallmark Cards, Inc. v. Kansas Dept. of Commerce & Housing*, 32 Kan. App. 2d 715, 88 P.3d 250, *rev. denied* 278 Kan. 844 (2004), this court ordered the Department of Commerce and Housing to certify Hallmark for the HPIP program for tax years 1995 and 1996. The Department did certify Hallmark HPIP eligible in December 2004.

After receiving that certification, the Kansas Department of Revenue calculated the credit to be refunded and the amount to be carried forward into future tax years. Following the statute, KDOR

ruled the HPIP credits that could be refunded to Hallmark for a tax year are limited to the total tax liability paid by Hallmark that tax year. Any excess credits would be carried forward. Following this holding, KDOR refunded $679,220 plus interest to Hallmark for the tax year 1996 and nothing for 1995. The balance was carried forward.

In contrast to this ruling limiting the credit, Hallmark contends the corporation was entitled to the entire refund. It seeks an added refund of $661,579 with interest, for tax years 1995 and 1996, because of the settlement agreement. After completing all administrative remedies, Hallmark appealed to BOTA, where BOTA agreed with KDOR.

Here, Hallmark asserts BOTA did not correctly interpret the terms of the settlement agreement with KDOR. Hallmark further contends that BOTA's decision is not supported by substantial competent evidence. The corporation asks us to remand the matter for a determination of a refund amount consistent with its interpretation of the settlement agreement.

On the other side, KDOR responds that Hallmark received the proper refund under the settlement agreement and is now seeking to try to alter the agreement to gain further benefit. KDOR simply asks this court to affirm BOTA's order.

*We list our scope of review and some fundamental points of law.*

The interpretation and legal effect of a written contract are matters of law over which an appellate court has unlimited review. *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006). Whether a written instrument is ambiguous is also a question of law subject to de novo review. *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002).

The primary rule for interpreting written contracts is to discover the parties' intent. If the terms of the contract are clear and unambiguous, the parties' intent and the meaning of the contract are to be determined from the language of the contract without applying rules of construction. *Anderson v. Dillard's Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007); *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, 1101, 78 P.3d 480 (2003), *rev. denied*

277 Kan. 928 (2004). A contract is ambiguous when it contains provisions or language of doubtful or conflicting meaning, and such ambiguity only appears when the " 'application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.' [Citation omitted.]" *Liggatt*, 273 Kan. at 921.

To interpret a provision in a contract, a court should not isolate one particular sentence but consider the entire instrument. The law favors reasonable interpretations. See *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10-11, 13 P.3d 351 (2000).

*We look chiefly at the first two paragraphs of the agreement.*

Both parties agree the first two paragraphs of their settlement agreement control the outcome of their dispute. But they disagree over the interpretation of the two. They are:

"1. Hallmark shall be entitled to claim a nonrefundable income tax credit in the amount of $1,750,000 against its Kansas corporate income tax liability commencing with the tax return filed for tax year 2000. If the amount of the credit exceeds the tax due for tax year 2000, the amount thereof which exceeds such tax liability may be carried forward for credit in the succeeding tax year or years until the total amount of the tax credit is used.

"2. The allowance of the nonrefundable income tax credit shall release both parties from any further liabilities or refunds for tax years 1994 through 1996 inclusive, *with the exception of those associated with federal RAR adjustments which must be timely reported to the Department when they become final, as required by law, or any other issues not raised or that could have been raised in the appeal before BOTA, including the allowance of income tax credits under the High Performance Incentive Program, K.S.A. 79-32,160a(e).* Any liabilities or refunds associated with federal RAR adjustments shall be computed using the apportionment factor percentages set forth in the schedule attached hereto as Exhibits A, A-1, A-2 and A-3." (Emphasis added.)

Paragraph two of the agreement refers to a specific statute, K.S.A. 79-32,160a(e). When parties make such a specific reference, it is important to review the statute that is the subject of that reference. K.S.A. 79-32,160a(e) states in relevant part:

"The credit allowed by this subsection shall be a one-time credit. If the amount thereof exceeds the tax imposed by the Kansas income tax act on the taxpayer's Kansas taxable income for the taxable year, the amount thereof which exceeds such tax liability may be carried forward for credit in the succeeding taxable year

or years until the total amount of the tax credit is used, except that no such tax credit shall be carried forward for deduction after the 10th taxable year succeeding the taxable year in which such credit initially was claimed and no carry forward shall be allowed for deduction in any succeeding taxable year unless the taxpayer continued to be qualified and was recertified for such succeeding taxable year pursuant to K.S.A. 1997 Supp. 74-50,131, and amendments thereto."

Obviously, under the plain terms of the tax settlement agreement, which has an exception for credits received under a specific statute, any such credits are subject to the terms of the statute. If there was no statute, there would be no credits. We hold the carry-forward provisions of K.S.A. 79-32,160a(e) apply to all credits received under that subsection, including the credits considered by the settlement agreement here. Hallmark's claim otherwise is simply not supported by the plain language of the settlement agreement.

Therefore, as KDOR and BOTA reasoned, the refund available to Hallmark for those years was limited to Hallmark's tax liability for that tax year. We cannot criticize them for following the law. Hallmark had prepaid its tax, and when its total tax liability was later reduced by application of the HPIP credits, it was entitled to a refund of the amounts it had prepaid that were replaced by HPIP credits, up to its amount of tax liability. It received this refund, and there is no provision in the HPIP statute for any further refunds to Hallmark for these tax years based on its HPIP credits. BOTA ruled correctly.

### BOTA made its decision on fact stipulations.

Hallmark argues that BOTA's decision is not supported by substantial competence evidence, contending BOTA must have accepted KDOR's "appeal adjustments" to arrive at its conclusion that no added refunds were proper, even though the schedules reflecting these refunds were not prepared until 5 years after the settlement. Hallmark goes on to contend the appeal adjustments were "not based on any rational methodology that can be ascertained by Hallmark or by any reasonable person" and have no support in the tax settlement agreement.

The parties' stipulated facts reflect KDOR calculated and made a proper refund to Hallmark for the tax years at issue, based on HPIP credits, up to the amount of Hallmark's tax liability for these years. As the above analysis determined, these credits were the extent of the refunds that could be properly made under the HPIP statute, and the rest of the HPIP credits had to be carried over.

Hallmark does not challenge the stipulation that it received a refund for the tax years at issue which reflected the application of HPIP credits to its tax liability for those years. Instead, Hallmark focuses only on the idea the HPIP credits should be able to generate additional refunds by means of tax overpayment amounts from the years at issue. Hallmark offers a calculation table showing how "overpayments by Hallmark were available to fund the refunds of the additional HPIP credit amounts sought by Hallmark." We note, in this table, the "Tax Per Original KS return" line reflects the tax Hallmark prepaid, *not* Hallmark's tax liability. Again, the statute is clear.

Even if tax overpayment amounts existed, the HPIP credits could not be applied to them to produce more refunds, as the HPIP statute only allows the credits to be applied against tax liability. Because the parties' stipulations reflect that Hallmark received refunds through the application of HPIP credits up to the total amount of its tax liability for 1995 and 1996, the existence of any tax overpayment amounts has no bearing on this issue. BOTA's decision was based on determining a question of law and was supported by the parties' stipulations. Hallmark's argument on this point is not persuasive.

Affirmed.